KANSAS PACIFIC RAILWAY CO. V. ROBERT REYNOLDS, *et al.*

CONTRACT, FOR SHIPPING STOCK; *When Special Contract is Void.* Where a railway company has in fact only one rate at which it carries or offers to carry cattle from O. to S., although it may have posted up in the office of its agent at O. other and higher rates, and an owner of cattle, without anything being said about any special contract, but with the consent of the company, places his cattle in the company's cars at O. to be transported to S., and the agent of the company at O. then presents to the shipper a certain special contract for carrying said cattle at the full rate at which the company carries cattle, though less than said posted rates, and with certain restrictions, limitations, etc., as to the company's responsibility, and the agent then demands that the shipper shall sign said special contract or have his cattle unloaded, and the agent gives to the shipper no other option or alternative, and the shipper then signs said special contract, *held,* that said special contract, so far as it attempts to restrict the liability of the railway company, or to impose additional burdens upon the shipper, as conditions precedent to a recovery for damages resulting from the negligence of the railway company, is without consideration, and void.

*Error from Davis District Court.*

REYNOLDS and two others, as partners, at the November Term 1874, recovered judgment against the *Railway Company* for $259.20 damages for injuries sustained to their cattle while being transported over said company's railroad. All necessary facts are stated in the opinion. The *Railway Company* brings the case here.

*J. P. Usher,* and *E. W. Dennis,* for plaintiff in error.

*McClure & Humphrey,* for defendants in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action for damages claimed to have resulted from the negligence of the defendant below, (plaintiff in error,) in transporting certain cattle of the plaintiffs over the defendant's railroad from Ogden east to State Line station. The defendant denied the negligence and damage, and also set forth in its answer that the cattle were transported under a certain special contract, and that no notice of any loss or damage was ever given to the defendant as provided for in said special contract, and therefore that even if there was any negligence, loss, or damage, the defendant is absolved from paying anything therefor. Said special contract as given in the defendant's answer reads as follows:

"LIVE-STOCK CONTRACT.

Nos. of Cars, } "G. F. O. No. 44, KANSAS PACIFIC RAILWAY,
"Ogden Station, June 18th, 1870.

"Received of Reynolds, Ferrell & Seymour, two cars of cattle, to be delivered at State Line station, at special rates, being forty dollars per car-load, each car containing eighteen animals, more or less. In consideration of which, and for other valuable considerations, it is hereby mutually agreed, that said company shall not be liable for loss by animals injuring themselves or each other, or by jumping from the cars, delay of trains, or other damage said property may sustain, except such as may result from the actual negligence of the company or its agents. The owners or persons in charge of stock are passed free on the train accompanying the stock, at their own personal risk, in consideration of the fact that they are to water, feed and take care of the stock at their own expense and risk, and are to assist in unloading the stock at destination, and at feeding or transfer points. It is further agreed that the company shall not, in any event, be liable for any loss, damage or detention caused by military authority, or by rebellion, insurrection or riot, or for stock dying on the train for any cause. Agents are not permitted to ship stock in box cars under any circumstances, without the owner or his agents consent thereto in writing, to be indorsed on this contract, and signed by the agent or owner shipping, and then they are to be entirely at the risk of the owner. The com-

pany is not to be held responsible for the loss of stock by doors getting closed and stock smothering. No claim for loss or damage on live stock will be allowed, unless the same is made in writing, before or at the time the stock is unloaded. The evidence that the shipper, after full understanding thereof, assents to all the provisions of the foregoing contract, is his signature hereto. The railway company does not undertake to transmit live stock in any given time.

"THEO. WEICHSELBAUM, *Agent for the Company*.

"REYNOLDS, FERRELL & SEYMOUR, *Shippers*.

"Witness — BEN. WOSSBAUM."

The plaintiffs replied, that said special contract was executed on their part without any consideration; and therefore they claim that the same, so far as it differs from the general contract entered into in such cases between shipper and common carrier, is not binding upon them; and therefore they claim that they were not bound to give said notice of loss and damage.

The evidence shows among other things as follows: The defendant company introduced evidence showing that it had, at the time said cattle were shipped, regular printed tariff rates for the transportation of cattle; that the rate for carrying cattle from Ogden to State Line was $92 per car-load, and that a copy of said tariff rates was posted up in the office of Theo. Weichselbaum, the agent of the railway company at Ogden. But on the contrary, R. B. Gemmell, the general freight agent of the company at the time these cattle were shipped, to-wit, June 18th 1870, and a witness for the company, testified that "In June 1870, the agent at Ogden had no authority to ship at other than special rates, under such a contract as above referred to." And Robert Reynolds, one of the plaintiffs, and a witness for the plaintiffs, testified: "At the time I ordered cars, no contract was entered into — nothing said as to terms. * * * Theo. Weichselbaum said nobody could ship unless they signed that contract; said there was no other rates. I got the cattle on the cars without saying anything to Weichselbaum about any contract, and believed in law I could force him to take them without any. That is

one reason why I objected to signing the contract. He had offered to read the contract. The option was offered us to ship under this contract at this rate, or to unload." E. T. Ferrell, one of the plaintiffs, and a witness for the plaintiffs, testified: "Theo. Weichselbaum said that he would turn out the cattle unless we signed the contract. Reynolds said he thought he could make the company take the cattle without signing any contract. I passed free upon the train with the cattle." While the cattle were being transported from Ogden to State Line an accident occurred at Topeka which delayed the train about twelve hours, and damage resulted to the cattle from their prolonged detention in the railroad cars on a very warm and calm day without food or water. But the plaintiff gave no written notice of any claim for loss or damage, as required by said special contract. They gave a *verbal* notice however. Now we suppose about the only question worth considering in this case is, whether the said special contract was executed on the part of the plaintiffs with or without any sufficient consideration therefor. If it were true that the regular rate for carrying cattle by the railway company from Ogden to State Line, with the extended responsibility of a common carrier, was $92 per car-load, and that $40 per car load for the same service was a special and reduced rate because of a limited and diminished responsibility, and if the plaintiffs had been allowed to exercise their choice as to which of the two ways they would have their cattle carried, and had then chosen the latter, and had then voluntarily executed said special contract, such special contract would under such circumstances be valid and binding, and founded upon a sufficient consideration, and its requirements that the plaintiffs should give said written notice of loss and damage would be reasonable, and could not be ignored with impunity. (*Goggin v. K. P. Rly. Co.,* 12 Kas. 416.) The difference in such a case between the higher rate required by the railway company as a common carrier and the reduced rate accepted by the company under a restricted responsibility, would be a sufficient consideration going to the plaintiffs for the execu-

tion of the said special contract by them. But it is not true, according to the evidence, that the regular rate for carrying cattle from Ogden to State Line was $92 per car-load. The regular rate was $40 per car-load, and no more. There is not the slightest evidence, except merely said printed rates, that the company ever carried or offered to carry any cattle at any other rate than $40 per car-load; and there was abundance of evidence showing that in fact they had no other rate. Neither did the company give the plaintiffs any option as between rates, or as between terms of transportation. The only option that the company offered the plaintiffs was, to sign said special contract or have their cattle unloaded. It will be remembered that nothing was said about any special contract until the cattle were all loaded in the cars. It was evidently the intention of the plaintiffs to ship their cattle without any special contract, they paying full rates, and the company being liable as common carriers. But after they had loaded their cattle in the cars, then the agent of the company demanded of them that they sign said contract or have their cattle unloaded. This was not right. A railroad company has no right to refuse to carry cattle, and it has no right to refuse to carry them under the full responsibilities of a common carrier. And in all cases, where cattle are carried by a railroad company, each party (the carrier and the shipper) has a right to demand that they be carried under just such terms and conditions, and with just such responsibilities, as are established by law for the transportation of such property by common carriers; and these terms, conditions, and responsibilities, can be varied or altered only by the mutual consent or agreement of both parties. Therefore, under all the circumstances of this case we think the said special contract, so far as it attempted or attempts to restrict the liability of the railway company, or to impose additional burdens upon the plaintiffs as conditions precedent to a recovery for damages resulting from the negligence of the railway company, was and is unfair, unjust, without consideration, and

void. It is unnecessary to discuss any of the other questions raised in this case.

The judgment of the court below must be affirmed.

All the Justices concurring.