THE ATCHISON, TOPEKA & SANTA FE RAILROAD COMPANY v. M. M. MASON.

No. 102.

1. PETITION—*Motion to Make Definite and Certain Properly Denied.* Where a petition states facts constituting the plaintiff's cause of action in ordinary and concise language, and the defendant is thereby informed of the nature of the action against it, and there is nothing indefinite or ambiguous about it, and there are no redundant or irrelevant allegations therein that could in any manner prejudice the defendant on the trial of the action, a motion to make it more definite and certain is properly denied.

2. COMMON CARRIER — *Limit of Liability by Contract — Shipper's Choice.* A common carrier cannot limit his common-law liability by a special contract in writing with the shipper, unless it is freely and fairly made; and the carrier cannot exact, as a condition precedent for carrying stock or goods, that the shipper sign a contract in writing limiting or changing the common-law liability. If the carrier has two rates or charges for carrying stock or goods, one if carried under the old common-law liability, and the other if carried under a special contract, the shipper must have real freedom of choice in making his election. (*A. T. & S. F. Rld. Co. v. Dill*, 48 Kan. 210.)

3. EVIDENCE — *Hearsay, and Conclusions.* Ordinarily a witness must speak of facts within his own knowledge, and not what others have told him or his conclusion from appearances, and where the facts are to be established or determined from appearances and circumstances, the witness must describe the appearances and circumstances and leave the conclusion to be drawn therefrom to the determination of the jury.

4. ——— *Experts — Qualifications Must Be Shown.* On questions of science, skill, or trade, persons of science, skill, or trade, or others who have derived a knowledge of the facts under investigation by study or from actual observation or experience, may not only testify to facts but may give their opinions in evidence; but before such persons can give opinions on the matter under inquiry it must be shown that they possess the necessary qualifications.

MEMORANDUM.— Error from Lyon district court; CHARLES B. GRAVES, judge. Action by M. M. Mason against The Atchison, Topeka & Santa Fe Railroad Company to recover damages on account of a shipment of cattle. Judgment for plaintiff. Defendant brings the case to this court. Reversed. The opinion herein was filed September 5, 1896.

The statement of the case, as made by JOHNSON, P. J., is as follows:

On the 11th day of October, 1889, M. M. Mason filed his petition in the district court of Lyon county, Kansas, against the Atchison, Topeka & Santa Fe Railroad Company, in which he claimed that on the 18th day of October, 1887, he delivered four car-loads of cattle to the railroad company at Lang, a station on said railroad, in Lyon county, Kansas, to be transported from said station to Chicago, Ill.; that said cattle were received by the railroad company in its cattle-yards at said station to be shipped to Chicago, Ill.; that said cattle-pens were insufficient to hold the cattle and part of them escaped from the yards; that he was put to great trouble and expense in hunting up

and getting said cattle ready for shipment; that he was thereby greatly delayed in the shipment of his cattle, and that certain of his cattle were injured in consequence of the defective condition of the stock-yards.   He claimed damages in the sum of $397.

The plaintiff below afterward, by leave of court, filed an amended petition, in which he alleged:

"That the railroad company is a corporation duly organized and existing under and by virtue of the laws of the state of Kansas, and as such corporation is now, and for more than four years past has been, operating a railroad through and into said state of Kansas, and to the west line thereof; that one of the said stations on the said railroad so operated by said defendant as aforesaid is Lang, in the county of Lyon and state of Kansas; that said defendant is now, and for more than three years last past has been, holding itself out to the public as a common carrier of freight, including live stock, and has solicited the patronage of the public and this plaintiff in that capacity; that at said station of Lang it has invited the people to bring live stock for shipment over its railroad, and has held itself out and represented itself as fully and amply equipped for the business of properly and safely receiving and loading live stock at said station, and transporting them from thence to other points; that on the 17th day of October, 1887, he orally contracted with said railroad company, through its duly authorized agent at Lang, for a valuable consideration, to receive for shipment and haul for him 75 beef-cattle from the said station of Lang to the city of Chicago, in the state of Illinois, and said railroad company represented to him and to the public generally that it had stock-yards at the said station of Lang in proper condition for receiving and loading cattle for shipment therefrom, and that said railroad company would receive cattle at said station for loading on cars and for shipment to other points, as aforesaid; that, relying on the representations of the railroad company, and the proper performance of its

duties as a common carrier, he, at the date aforesaid, placed in the stock-yards at Lang station the 75 head of cattle hereinbefore mentioned, for shipment; that said yards were in bad condition, and were not at the time constructed so as to hold cattle, and were at the time badly out of repair, which facts were well known to the railroad company but were entirely unkown to him; that a portion of the fence surrounding said stock-yards had been burned down some time before the date upon which he placed his cattle therein, and had been so carelessly and negligently repaired as not to be sufficient to hold cattle, but so that said fence was easily knocked down by cattle getting against it where it had been so negligently and carelessly repaired; that the gate of said yard was also carelessly and negligently permitted to be and remain out of repair, so as to be at that time unsafe and dangerous; that such defects in said gate and fence were not of a character to be noticed by an ordinary observer whose attention was not called thereto, and were all unknown to him, but were well known to the railroad company, and had been so known for some time prior to the date last mentioned; that before said cattle were loaded for shipment 13 head of them escaped from said yards, owing to the careless and negligent construction and repair thereof, and the railroad company and plaintiff below were unable to find said cattle and restore them to said yards until next day; that in hunting for said cattle he expended the sum of $15 necessarily, and further, by reason of the escape of said 13 head of cattle, the entire lot were delayed in shipment 24 hours; that on account of the escape of said cattle and the delay in shipment thereof, said cattle fell off in flesh to the extent of at least 50 pounds to each steer, thereby damaging said cattle in value at least in the sum of $180; that by reason of the careless and negligent construction of said gate and the fact that it was carelessly and negligently suffered to be and remain out of repair, said gate fell down and crippled two steers, damaging said steers in value at least in the sum of $20."

And for a second cause of action the plaintiff below alleges :

"That the railroad company was careless and negligent in handling said cattle after they were loaded upon the cars ; that the train was run out about six miles and was permitted to stand on the track there for a number of hours, and were not delivered at Kansas City, Mo., within a reasonable time after they were loaded upon the train ; that when they arrived at Kansas City, and were unloaded in the stock-pens and fed, they were intermixed with other cattle, and in reloading them to be taken on to Chicago one steer was lost by being intermixed with other cattle and that he never recovered said steer, and that, by reason thereof, he was greatly delayed in placing his cattle on the market at Chicago, and damaged by the shrinkage of his cattle and the loss of the steer, and that he suffered damages in the sum of $397."

To this petition the railroad company filed its motion to make it more definite and certain in certain particulars, which motion was overruled, and the railroad company excepted ; and thereupon the railroad company filed a demurrer to the amended petition, for the reason that the petition did not state facts sufficient to constitute a cause of action in favor of the plaintiff below and against the defendant below, which demurrer was overruled, and the railroad company duly excepted.   The railroad company then filed its answer to the petition of plaintiff below, containing a general denial of the allegations in the plaintiff's petition, and alleged contributory negligence on the part of the plaintiff below ; and, as a third defense, alleged that on the 17th day of October, 1887, it and the plaintiff below made and entered into a written contract whereby it agreed, in consideration of the agreements therein contained to be done, executed and performed on the part of the plaintiff below, to

carry and transport for him 75 head of cattle from its station at Lang, Kan., to Chicago, in the state of Illinois; and attached a copy of the contract and bill of lading to its answer; that the plaintiff below wholly failed and neglected to give any notice in writing of any claim whatever on his part of any injury, damage or loss to the live stock agreed by the railroad company in said contract to be transported from Lang to Chicago, to any officer of the railroad company or its nearest station-agent, before the stock was removed to the place of destination mentioned and described in the contract, or before the same was removed from the place of delivery of the same to said party of the second part or his consignee, and before said stock was mingled with other stock, and by reason of the contract and its terms and conditions, and the facts alleged, the railroad company was not liable to him for any of the loss or damage whatsoever.

It is recited in said written contract:

"3. That said party of the second part agrees that he will load and unload said stock at his own risk and feed and water and tend the same at his own expense and risk while it is in the stock-yards of the party of the first part awaiting shipment and while on the cars, or at feeding or transfer pens or where it may be unloaded for any purpose.

"4. It is further agreed that said party of the second part will see that said stock is securely placed in said cars furnished, and that the cars are securely and properly fastened so as to prevent the escape of stock therefrom.

"5. It is further agreed, that in case the said party of the first part shall furnish labor to assist in loading and unloading said stock, they shall be subject to the orders and admitted employes of said party of the second part while so assisting.

"6. And for the consideration before mentioned said party of the second part further agrees that, as

a condition precedent to his right to recover any damages for loss or injury to said stock, he will give notice in writing of his claim therefor to some officer of said party of the first part, or its nearest station-agent, before said stock is removed from the place of destination mentioned, or from the place of delivery of the same to the said party of the second part, and before such stock is mingled with other stock.

" 7. Agents of this company are not authorized to agree to forward live stock to be delivered at any special time."

This contract was signed by B. A. Ashley, agent for the company, and M. M. Mason, shipper.

To this answer plaintiff below filed his reply. First was a general denial of every allegation in the answer, except as in the petition admitted ; second, a denial of the contributory negligence ; and third, an allegation that he was not fully advised of the contents of the written contract, but signed the same as stated in the petition, and never agreed to release defendant from any of its obligations and duties or responsibilities as a common carrier.

Upon the foregoing issues the case was tried before the court with a jury, and resulted in a verdict and judgment for the plaintiff below. The railroad company filed a motion for a new trial, which was overruled, and exceptions duly taken. It brings the case here and asks for a reversal of the judgment below.

*A. A. Hurd*, and *Stambaugh & Hurd*, for plaintiff in error.

*Graves & Dickson*, and *I. E. Lambert*, for defendant in error.

The opinion of the court was delivered by

Johnson, P. J. : The brief of plaintiff in error contains seven separate specifications of error to which it

asks the consideration of this court. The first and second specifications of error complained of may be considered together, as they are both leveled at the amended petition of the plaintiff below—one, a motion to make it more definite and certain, and the other a demurrer. The amended petition alleges that the railroad company is a corporation owning and operating a line of railroad through Lyon county, Kansas, and is a common carrier of goods and live stock; that on the 17th day of October, 1887, the plaintiff entered into a verbal contract with the station-agent of the railroad company at its station at Lang, Lyon county, Kansas, to transport 75 head of steers from said station of Lang to the city of Chicago, Ill.; that in pursuance of said agreement he delivered the cattle in the stock-yards of said railroad company at its station at Lang; that by reason of the defective and unsafe condition of the stock-yards 13 head of his cattle escaped from the yards and could not be recovered until the next day; that the shipment of the entire lot of cattle was delayed 24 hours, and that it cost him $15 to recover the cattle; that the railroad company and its agents had knowledge of the defective and unsafe condition of the stock-yards, and that plaintiff had no means of knowing it; that by reason of the defective condition of the gates in the stock-yards two of his steers were injured; that the delay in the shipment of his cattle was occasioned by reason of the escape of the 13 head of cattle, and on account of the delay the cattle lost flesh and shrunk up, and he was damaged thereby; that, after the recovery of the cattle that had escaped from the stock-yards, and after they were all loaded on the cars for transportation over the road to Kansas City and Chicago, the cars were roughly handled and the cattle were damaged thereby; that,

by negligence of the servants in charge of the train, it was unnecessarily delayed on the road, and the cattle did not arrive in Kansas City as soon as they should; that, when they had arrived at Kansas City and had been unloaded in the stock-yards and fed, the servants of the company intermingled his cattle with other cattle in the yards, and one steer was lost thereby, and that he was greatly damaged on account of the injury to the two steers and by the shrinkage of the cattle and by the loss of the one steer at Kansas City.

The petition states the facts constituting the cause of action in ordinary and concise language and without repetition, and the relief to which the plaintiff below supposed himself entitled, and the defendant below was thereby informed of the nature of the claim against it. There was nothing indefinite or ambiguous in it, nor were there any redundant or irrelevant allegations contained therein that could in any manner prejudice the rights of the defendant below upon the trial. In the construction of a pleading for the purpose of determining its effect its allegations are to be liberally construed, with a view to substantial justice between the parties, and where the petition contains a plain and concise statement of all the facts constituting a cause of action, the court will not on motion require it to be made more definite and certain, or order allegations stricken from the petition, unless they are such as not to be readily understood, or such that the adverse party should have some information of the facts that are in some manner within the knowledge of the other party and are not apparent to his adversary from the nature of the facts as shown by the pleadings, or where there are unnecessary allegations that would in some manner tend to prejudice

the defendant. The motion to require the plaintiff below to make the amended petition more definite and certain was properly overruled. The facts stated in the amended petition being sufficient to constitute a cause of action in favor of the plaintiff below and against the defendant below, the demurrer was rightly overruled.

It is urged that the court erred in overruling the demurrer of the defendant below to the evidence. This brings us to a consideration of the evidence in connection with the written contract for the shipment of the cattle from Lang station, in Lyon county, Kansas, to Chicago, Ill., and as to the legal effect of the contract. The execution of the contract is admitted by the pleadings, but the plaintiff below alleges that after the cattle had been loaded in the cars of the railroad company he was requested and required to sign a written and printed contract or agreement, the contents of which he was unable to give; that he was given a duplicate of it at the time, but afterward the conductor on the train took it up and retained it. He says that at the time he signed it he objected and protested against doing so, but was informed that it was a condition precedent to the forwarding of his cattle, and thereupon, under protest, he signed it. Said contract provided, among other things, that the railroad company would ship the cattle of plaintiff below to Chicago, in the state of Illinois. The contract is set out in full in the answer of the railroad company, and the reply admits its execution but alleges that it was signed as stated in the amended petition.

The contention on the part of the railroad company is that the written contract of October 17, 1887, en-

tered into by the defendant in error, is binding, and therefore controls.   The contract provided:

"Said party of the second part further agrees that, as a condition precedent to his right to recover damages for loss or injury to said stock, he will give notice in writing of his claim therefor to some officer of said party of the first part, or its nearest station-agent, before said stock is removed from the place of destination above mentioned, or from the place of delivery of the same to said party of the second part, and before such such stock is mingled with other stock."

The railroad company claims that, as the evidence shows that no such notice was given, the plaintiff could not recover.   The plaintiff below alleged that he was compelled to sign the contract as a condition precedent to the transportation of his cattle; that he had entered into a verbal agreement for the shipment of his cattle from Lang station to Chicago, Ill., and after the cattle were loaded upon the cars he was required to sign the written contract before the company would ship them out; that he objected and protested against signing the contract, and that therefore the contract was not binding or of any force.

The supreme court of this state has decided that a special contract for a notice in writing of damages or injuries, when reasonably and fairly made, is binding upon the parties.   (*Goggin v. K. P. Rly. Co.*, 12 Kan. 416; *Sprague v. Mo. Pac. Rly. Co.*, 34 id. 347; *W. & W. Rly. Co. v. Koch*, 47 id. 753.)   In the case of *A. T. & S. F. Rld. Co. v. Dill*, 48 Kan. 210, it is said:

"As a general rule, and in the absence of fraud or imposition, a common carrier is answerable for the loss or injury to stock, if there is no special contract or acceptance; but in all cases where the statute will permit, it is just and reasonable that a contract requiring written notice of the injury or damages claimed before the stock is removed from the place of desti

26—4 KAN. APP.

nation or mingled with other stock, when properly entered into, should be upheld. Such a contract, however, must be freely and fairly made with the railroad company — not exacted as a condition precedent of shipment. Railroad companies cannot arbitrarily fix a valuation on property of the shipper or arbitrarily demand or exact the execution of the contract limiting the common-law liability. (*K. P. Rly. Co. v. Nichols,* 9 Kan. 236.) If a railroad company has two rates for the transportation of goods or stock — one if the goods or stock are carried under the common-law liability, and the other if carried under a limited or special contract — the shipper must have real freedom of choice. He cannot be denied the right to have his goods carried by the carrier under its common-law liability ; but if he desires, and if the statute permits and public policy does not forbid, he may enter into a special contract with the carrier limiting the common-law liability. (*K. P. Rly. Co. v. Reynolds,* 17 Kan. 251 ; *K. C. St. J. & C. B. Rld. Co. v. Simpson,* 30 id. 645 ; *Express Co. v. Foley,* 46 id. 457 ; *Railroad Co. v. Lockwood,* 17 Wall. 367 ; *Hart v. Railroad Co.,* 112 U. S. 331.)''

On the trial of the case, the plaintiff below testified that on Sunday evening he drove his cattle from his pasture over to Lang station on the railroad and placed them in the stock-yards of the company, with the expectation of shipping them out at 11 o'clock that night ; that the cars in which to load them were then on the siding, and when he arrived at the stock-yards with his cattle the station-agent of the company came out and unlocked the gates, and the cattle were put in the yards and the gates locked, and he and his hired help went to supper ; that when they returned from supper he was informed that two of his steers had been injured by the falling of a gate and that part of his cattle had escaped from the yards ; that he went immediately, with his hired help, in search of the cattle that had escaped, but was unable to recover

them until some time the next day; that when his cattle were returned to the stock-yards and loaded on the cars ready to be taken out, the agent then requested him to sign the agreement for the transportation of the stock to Chicago; that he objected and protested against signing the same, and the agent told him that unless he signed the agreement the company would not ship his cattle; that he then signed the agreement under protest. He also detailed the facts in relation to the handling of the cars, the delay in arriving at Kansas City, and unloading, feeding and reloading the cattle, and the loss of the one steer at Kansas City, and the time of the arrival of his stock at Chicago; the amount of shrinkage to each steer by reason of the delays and the value of the steer lost in the stock-yards at Kansas City, and the reasonable value of the cattle per pound if they had been shipped through without delays.

We think the evidence was such that the whole matter was proper to submit to the jury for their consideration. It was a question of fact for the jury to determine, under all the evidence and proper instructions, whether the contract in writing was voluntarily and freely signed by the shipper; whether it was an unfair exaction of the railroad company after the cattle were delivered to it for shipment; whether it was an exaction as a condition precedent to the transportation of the cattle to Chicago, and whether the shipper was given his choice in the matter.

It is claimed that the court erred in admitting testimony over the objection of the defendant below. The plaintiff below was sworn and examined as a witness on his own behalf, and during his examination was permitted, over the objection of the defendant, to detail statements made to him by persons who claimed

to be employees of the railroad company, but he did not know who they were or what position they held with the company.    He was also allowed to state what he thought to be the value of the services of the men employed to assist him in hunting up the cattle that had escaped from the stock-yards, but was not shown to have any knowledge as to what was reasonable and ordinary compensation for such services, and was permitted to give his opinion that two steers were injured by the falling of a gate in the stock-yards, and also an opinion as to the shrinkage of cattle by delay in the shipment, and his opinion as to the value of the steer lost in the stock-yards at Kansas City.    Other witnesses for the plaintiff below were also permitted, over the objection of the defendant below, to give their opinions as to the amount cattle would shrink by being held in the stock-yards and in pastures and in the shipment.    None of these witnesses was shown to have any particular experience or knowledge of what the value of such services was, or what amount a steer under the circumstances would reasonably lose in flesh by the delays claimed.    Ordinarily, witnesses must speak of facts within their own knowledge, and not what others have told them, or what they determine from appearances ; and where the facts to be established are to be determined from appearances and circumstances the witness must describe the appearances and circumstances and leave the conclusion to be drawn therefrom to the determination of the jury.    Certain matters may be the subject of opinion of witnesses who are competent to give an opinion on the subject under investigation.    On a question of science, skill, or trade, persons of science, skill, or trade, or others who have derived a knowledge of the facts under investigation by study or from actual observa-

tion and experience, may not only testify to facts but are permitted to give their opinions in evidence; but before such persons can give opinions on the matter under inquiry it must be shown that they possess the necessary qualifications. Neither of the witnesses who testified in relation to the shrinkage of the cattle was shown to be competent to give an opinion; they were not shown to have been engaged in the business of shipping cattle themselves, or to possess observation and experience from frequently seeing cattle shipped, or from observing the weight of cattle before and after they were shipped. Men who have had experience as shippers and have observed the shrinkage of cattle in shipment, and have handled cattle under similar circumstances and observed the effect thereof on the cattle, would be competent to give opinions as to how much they would shrink by handling and by confinement in stock-pens and in strange pastures, or in transportation; but before they are competent to give an opinion on the subject their knowledge of the subject must be shown. The witnesses not having been shown to possess such knowledge as made them competent to give an opinion, their testimony should not have been permitted to go to the jury.

It is insisted by plaintiff in error that there was error in the instructions to the jury. We have carefully examined the instructions of the court and find them quite full and complete, and do not find any error in them. The learned judge stated in his charge to the jury the issues fully and correctly, giving them the law that they should apply to the facts as they should be found by them.

There are other errors complained of by plaintiff in error in its brief and argument, but we do not deem them of sufficient importance to be noticed in this

opinion, as the case must be reversed for the error in admitting incompetent testimony.

The judgment is reversed, and the case remanded to the district court, with direction to set aside the verdict of the jury and grant a new trial.

All the Judges concurring.