PETER QUINT AND MARGARET QUINT v. THE FIRST NATIONAL BANK OF HAYS CITY.

No. 160.     (58 Pac. 1010.)

1. PLEADING—*Action on Promissory Notes—Copies.* In an action upon promissory notes and for the foreclosure of a real-estate mortage, it is sufficient for the party to set out as exhibits the notes, together with all the credits and indorsements as they may appear thereon, and, where this is done, a motion that plaintiff be required to make his petition more definite and certain by setting out other credits, or by setting out the same more in detail, is properly overruled.

2. FINDINGS OF JURY—*Conflicting Evidence.* The findings of the jury upon conflicting evidence, where there is some competent evidence tending to support all the findings and the judgment of the court, are conclusive upon this court, both as to the fact of the indebtedness and the amount.

3. NATIONAL BANKS—*Usury—United States Statutes.* Under section 5198 of the Revised Statutes of the United States, where a national bank knowingly takes, receives or charges a usurious rate of interest, such usurious contract destroys the interest-bearing quality of that paper.

Error from Ellis district court; LEE MONROE, judge. Opinion filed October 10, 1899.     Modified.

*A. D. Gilkeson,* for plaintiffs in error.

*A. J. Bryant,* and *T. J. Bryant,* for defendant in error.

The opinion of the court was delivered by

McELROY, J. : This action was brought by the First National Bank against Peter Quint and Margaret

Quint to recover an amount claimed to be due upon
five promissory notes, the first three notes for $890
each, the fourth for $537.65, and the fifth for $800.

The plaintiff in its petition set out its first, second,
third and fourth causes of action in the usual form,
referring to the notes as exhibits "A," "B," "C,"
and "D." Copies of the notes, together with the
credits and indorsements thereon, were attached to
and made a part of the petition. "Exhibit A" was
indorsed "11–9–'93, this note is extended to Sep-
tember 1, A. D. 1894. Int. paid by note"; and ex-
hibits "B" and "C" were indorsed the same.

In its fifth cause of action, the plaintiff set out that,
at the time of the execution of the note set out as
"exhibit A," the defendants also gave to plaintiff two
notes, one for $185.80, and one for $851.85; that de-
fendants thereafter paid a sum sufficient to reduce the
amount of these notes to $800; that on the 2d day of
March, 1893, defendants made and delivered, in lieu
thereof and as a renewal, a note in the sum of $800,
by which they agreed to pay to plaintiff that sum of
money. This note was set out as "exhibit D" and
indorsed :

"5–13–'93, int. paid to June 15, '93.
"6–28–'93, int. paid to July 1, 1893.
"7–20–'93, int. paid to Aug. 1, '93, by Yost's check.
"11–9–'93. This note is hereby extended to Sept. 1, 1894. Int.
paid by note."

The defendants moved that plaintiff be required to
make its petition more definite and certain as to the
first, second, third and fifth causes of action, which
motion was overruled. The defendants filed a de-
murrer to the fourth cause of action, which was sus-
tained. Thereafter defendants filed their answer,
consisting of a general denial and pleas of usury,
payment, want of consideration, misappropriation of

mortgaged property, and fraud, and prayed judgment against the plaintiff in the sum of $920.03. The reply was a general denial. A trial was had before the court and a jury, which resulted in findings and judgment for plaintiff for $1833, with interest at ten per cent. and costs of suit. A motion for a new trial was overruled, and the defendants, as plaintiffs in error, present the case to this court for review.

The assignments of error present but three questions for consideration, which we will take up in order.

*First.* That the court erred in overruling the defendants' motion to make the petition more definite and certain. The defendants by their motion sought to have plaintiff's petition made more definite and certain in this, that the bank specifically state the amount of interest paid on exhibits "A," "B," and "C"; that it state the amount paid in reducing the indebtedness on the two notes mentioned in the fifth cause of action to the sum of $800; that it set out the amount and date of each payment; that it state the amount of interest paid by each, by note and by Yost's check. The action was upon promissory notes for the unconditional payment of money. Section 119 of chapter 95, General Statutes of 1897 (Gen. Stat. 1899, § 4373), reads:

"In an action, counter-claim or set-off founded upon an account, promissory note, bill of exchange or other instrument for the unconditional payment of money only, it shall be sufficient for a party to give a copy of the account or instrument, with all credits and indorsements thereon. . . ."

The notes were set out as exhibits, together with all the credits and indorsements as they appeared thereon. It is not claimed that there were other credits or in-

Quint v. Bank.

dorsements upon the notes than those set out, but it
is insisted that the credits and indorsements as they
existed upon the notes were insufficient.   This section
authorizes the party to set out as an exhibit copies of
his notes, together with all the credits and indorse-
ments thereon as they are on the original.    The
pleader fully complies with this statute when he sets
out an exact copy of the instrument sued upon
together with all the credits and indorsements which
have been made thereon.    The motion that plaintiff
be required to make the petition more definite and
certain was properly overruled.

*Second.* That the verdict is not sustained by suffi-
cient evidence and is contrary to law.   The plaintiff
upon its several causes of action claimed judgment
for something over $3000 ; the defendants denied any
indebtedness, pleaded usury, payment, want of con-
sideration, misappropriation of mortgaged property,
and fraud ; they prayed judgment against the plain-
tiff for something like $900.    Each of the parties in-
troduced testimony tending to support his claim.
There are about 200 pages of testimony.  The evidence
is very conflicting.    There is some testimony, how-
ever, tending to show usury charged in all of the
notes set up in plaintiff's petition, and in some of the
notes of which these were renewals.    Some of the tes-
timony tends to show cash payments made upon ac-
count of the notes, and the delivery of wheat for credit
on the indebtedness.    Nearly all of this testimony
was contradicted by plaintiff.   Upon this conflicting
testimony, the jury returned a general verdict for plain-
tiff in the sum of $1833.    It is evident from this ver-
dict that the jury did not believe all of the defendants'
testimony, nor all of plaintiff's ; that there was some
usurious interest included in these notes, the exact

amount, however, is not clear; nor does it clearly appear from what date the bank commenced to charge usurious interest. The weight of the evidence tends to show an indebtedness upon the part of the defendants upon the notes in question. However, it was solely within the province of the jury to say from all the evidence whether there was an indebtedness, and if so, the amount. There is some competent evidence tending to support the findings of the jury and the judgment of the court. The findings are therefore conclusive so far as this court it concerned, both as to the fact of the indebtedness and the amount.

*Third.* That the court erred in instructing the jury. The court instructed the jury upon the question of usury as follows:

"3. If you believe from the evidence that the plaintiff bank knowingly charged or received, on the notes sued on, interest at a greater rate than ten per cent. per annum since May 25, 1889, or greater than twelve per cent. prior to that date, and you further believe that these notes were only renewals of other notes which the bank held, and that on such other notes interest was knowingly charged or received by the bank at a greater rate than ten per cent. per annum, then you should, in arriving at your verdict, only allow the bank the actual amount of money represented by such notes without any interest, and if you find that the defendants have paid to the bank a sufficient sum to cover such original amount without interest, you should find for the defendants.

"4. You are further instructed that, if you find any usurious interest was contracted for as to any of the notes at any time by the parties to this action, such contract for usury would not offset the legal interest previously charged or contracted for, but you should not allow the plaintiff anything upon account of interest after the date of said usurious contract, upon the notes sued on."

Quint v. Bank.

It is the last paragraph of the instructions which is complained of by the plaintiffs in error.   Section 5198, Revised Statutes of the United States, provides :

"The taking, receiving, reserving or charging a rate of interest greater than is allowed by the preceding section, when knowingly done, shall be deemed a forfeiture of the entire interest which the note, bill or other evidence of debt carries with it, or which has been agreed to be paid thereon."

There is some evidence in the record that the notes were tainted with usury and that the jury so found.

The transactions between the Quints and the bank cover a period of about nine years and a large number of notes.   The original notes were given in 1888 ; there is no testimony showing these original notes contained usurious interest.   The testimony tends to show that at a later period, however, certain renewal notes became tainted with usury ; it is evident from an examination of the record the jury made some allowances for such usury.   The contention of plaintiffs in error in substance is, that section 5198 destroys the interest-bearing power of a note ; that if a usurious contract is entered into at any point of time in relation to the note, or renewals thereof, such contract relates back to the inception of the note, and works a forfeiture of legal interest which had accrued prior to its renewal into a note at an illegal rate. This section clearly means that the entire interest upon a note or bill on which an illegal rate of interest has been charged, received or contracted for shall be forfeited.   We are of the opinion that a valid, pre-existing debt, including principal and legal interest, is never affected by the vice or taint of usury subsequently agreed upon.   We find nothing in the case of *Shafer v. National Bank*, 53 Kan. 614, 36 Pac. 998, in

conflict with this view. The principle seems to be that a contract which in its inception is not affected by usury can never be invalidated by any subsequent usurious transaction. If the original notes were valid, but in subsequent renewals they become tainted with usury, the taint of the second illegal contract does not affect the validity of the original notes. (*Nichols v. Fearson*, 7 Pet. [U. S.] 109 ; *Burnhisel v. Firman*, 22 Wall. 174.)

In the case at bar there was some evidence tending to show that there was usury in some of the later renewal notes involved ; it therefore became the duty of the court to instruct the jury :

" If you find any usurious interest was contracted for as to any of the notes at any time by the parties to this action, such contract for usury would not affect the legal interest previously charged, or contracted for, but you should not allow the plaintiff anything upon account of interest after the date of said usurious contract upon the notes sued on."

From the amount of the verdict, it is evident that the jury found that the notes in question were tainted with usury. Usury destroys the interest-bearing quality of a note. The court was not authorized therefore to render judgment for ten per cent. interest. The judgment should bear interest at the rate of six per cent. The judgment will be modified in this respect and affirmed as modified.