**FELT et al. v. WESTLAKE et al.**

No. 8230—Opinion Filed June 11, 1918.

Rehearing Denied July 23, 1918.

(174 Pac. 1041.)

(Syllabus.)

1. Appeal and Error—Pleading — Motion to Make More Definite and Certain — Discretion of Court—Review.

A motion to make more definite and certain is addressed largely to the discretion of the trial court, and an order overruling such motion will not be reviewed, unless it appears that such discretion has been abused, and that prejudice has resulted to the party complaining from such ruling.

2. Conspiracy—Petition—Cause of Action.

Petition examined, and held to state a cause of action.

3. Conspiracy—Evidence—Demurrer.

Evidence examined, and held that demurrer thereto was properly overruled.

4. Conspiracy — Proof of Conspiracy — Circumstantial Evidence — Discretion of Court.

It is not necessary, in an action on the case in the nature of a conspiracy, to prove by direct evidence that the parties actually came together and entered into a formal agreement to do the things complained of, but such an understanding may be shown by proof of facts and circumstances from which the existence of a conspiracy may be inferred. And in the admission of circumstantial evidence upon a charge of conspiracy, great latitude is allowed. The limits to which evidence of this kind may be admitted rest in the sound discretion of the trial court.

5. Appeal and Error — Reversal—Introduction of Witness.

A cause will not be reversed because one of the parties thereto called his wife as a witness when it appears that objection to her competency was promptly sustained and she was not permitted to testify.

6. Instructions Approved.

Instructions examined and approved.

7. Conspiracy—Excessive Damages.

Verdict for $20,000 held excessive, and reduced to $15,400.

Error from District Court, Kingfisher County; James B. Cullison, Judge.

Action by A. W. Westlake against Floyd E. Felt, Frank Letson, and A. E. Stephenson and others. Judgment and verdict for plaintiff against the named defendants, and they bring error. Judgment modified by requiring a remittitur, and, as modified, affirmed.

W. O. Cromwell, John F. Curran, and Hills & Manatt, for plaintiffs in error.

F. L. Boynton, P. S. Nagle, and W. J. Otjen, for defendants in error.

HARDY, J. A. W. Westlake, as plaintiff, commenced an action on the case in the nature of a conspiracy against F. E. Felt, A. E. Stephenson, Frank Letson, and others. Trial resulted in verdict and judgment in plaintiff's favor against Felt, Stephenson, and

Letson, who bring the case here. The parties will be designated in accordance with their respective titles in the trial court.

Motion to make plaintiff's petition more definite and certain was filed, and sustained in part and overruled in part, and error is urged upon the action of the court in overruling certain grounds of said motion. It was alleged that Felt and one Cashion, conspired to force Westlake out of the bank with which the three were connected, and that Felt had arranged that Fleming, Letson, and Stephenson should at the proper time actively enter into the conspiracy, etc. It is urged that plaintiff should have been required to state with whom the arrangement was made that said defendants should act as stated, and to give the date when such arrangement was made and set out what was said and done by them. It was also alleged that plaintiff was treasurer of the town of Hennessey, and had on deposit to his credit as treasurer, $20,000 of money belonging to the town; that the bank had been changed from a state to a national bank, previous to which time the state bank was carrying in real estate loans approximately $16,000; that plaintiff withdrew said real estate loans from the bank and replaced same with moneys belonging to the town of Hennessey, and also used certain of the town money in taking up some excess loans, and that thereafter, at the instigation of defendant Felt, these real estate loans were returned to the national bank, and moneys replaced to the credit of the city, and it is alleged that the said real estate mortgages were returned to the bank with the knowledge and concurrence of the other defendants, who had planned this scheme to induce and inveigle the plaintiff in so doing for the purpose of placing the plaintiff in their power in carrying out their illegal purposes and designs and in effecting the carrying out of their conspiracy. It is urged that the petition should have been made more definite, in that plaintiff should have been required to state what was said or done by Felt to persuade him to so deal with the money and mortgages and state the manner and the means by and through which the other defendants concurred in the conduct of Felt, and it is generally urged that the allegations of the petition consist of conclusions only, without stating specific facts. Section 4770, Rev. Laws 1910, provides:

"* * * When the allegations of a pleading are so indefinite and uncertain that the precise nature of the charge or defense is not apparent, the court may require the pleading to be made more definite and certain by amendment."

While the petition contains certain conclusions, yet we think sufficient facts are alleged to set out the general nature of the charge and all the specific acts of the various defendants. The Supreme Court of Kansas, construing a statute of that state, which is similar if not identical, to the section quoted, holds that a motion to make more definite and certain can be sustained only when the exact nature of the charge is not apparent from the pleading. Kansas Pacific Ry. Co. v. McCormick, 20 Kan. 107. And the Court of Appeals of that state also held that, where the petition sets forth in plain and concise language the substantive facts upon which the claim for relief is founded, a motion to make the allegations more definite and certain ought not to be sustained. Dwelle v. Dwelle et al., 1 Kan. App. 473, 40 Pac. 825; Atchison, T. & S. F. R. Co. v. Mason, 4 Kan. App. 391, 46 Pac. 31; Quint et al. v. First National Bank of Hays City, 9 Kan. App. 474, 58 Pac. 1010. A trial court is invested with a considerable measure of discretion in ruling upon motions to make more definite and certain; and an order overruling such motion will not be reversed, unless it appears that such discretion has been abused, and that prejudice has resulted from the ruling thereon. City of Lawton v. Hills, 53 Okla. 243, 156 Pac. 297. And this is particularly true where on the trial of the case all of the facts have been fully developed and the issues in the evidence have been met by the party complaining of the ruling. Stephenson v. M., K. & T. Ry. Co., 85 Kan. 626, 118 Pac. 1045.

After the motion had been acted upon and the petition had been amended in compliance with the court's ruling thereon, demurrer was filed to the petition and overruled, and in this situation the ruling on the motion to make more definite and certain can only be considered in so far as such ruling affects or is involved in the ruling on the demurrer. Ludes and Another v. Hood, Bonbright & Co., 29 Kan. 49. In defendant's original brief the assignment presenting the ruling of the court on the demurrer is dismissed with the statement that the argument on the motion to make definite is applicable to the ruling upon the demurrer, and with the general statement that the petition states simply conclusions and arguments, without stating facts against the defendants sufficient to state a cause of action against them. There is no argument in support of this assignment, or authorities cited in support thereof, and under the well-established rule of this court this assignment might be disregarded, for the reason it might be deemed to

have been waived by reason of failure to properly present and brief the same. However, we have considered the arguments in the supplemental brief, and are of the opinion that the demurrer was properly overruled.

There was no evidence in overruling the demurrer to the evidence. A demurrer to the evidence admits all the facts which the evidence reasonably tends to prove, and all the inferences and conclusions which may reasonably and logically be drawn therefrom. On a demurrer to the evidence the court cannot weigh conflicting testimony, but will treat as withdrawn all the evidence which is most favorable to the demurrant. Tested by this rule, the evidence discloses the following state of facts:

Plaintiff bought an interest in the Farmers' & Merchants' Bank of Hennessey some time during the year 1909, and later he and his associates bought additional stock, plaintiff acquiring a controlling interest and becoming president while defendant Felt continued as cashier, after which the bank operated as a state bank until some time in June, 1912, when it was converted into a national bank. Felt, who was cashier, some time in January, 1912, attended a stammering school at Indianapolis, Ind., and was absent about six weeks, during which time he was credited with his salary, less $2.50 per day, which was deducted therefrom to pay for extra help required by reason of his absence. Upon his return he made some objection to this arrangement, but apparently acquiesced therein. At the time plaintiff acquired a controlling interest in the bank he borrowed from the Enid National Bank $6,500 with which to pay for the stock purchased at that time, and afterwards reduced this amount by payments thereon aggregating $1,000. Felt likewise became indebted to the Enid National Bank in a sum approximating $4,100.

Plaintiff was selected for jury service in the United States court at Enid in the spring of 1912, during which time he frequently conferred with the defendants Letson and Stephenson, who were officers of the Enid National Bank, and they advised and urged him to convert his bank into a national bank, stating to him that it was reported among the bankers, at a recent meeting of the bankers' association, that a number of state banks in the Eastern part of the state were in a failing condition, and there was strong probability of a very heavy special assessment being levied upon state banks to meet this condition. The bank of which plaintiff was president had previously paid into the bank guaranty fund approximately $8,000 to meet assessments that had been levied against it. Felt was also insistent that the bank be converted into a national bank. At first plaintiff would not consent, but finally was won over by the persuasions of Felt, Letson, and Stephenson. When the national bank examiner examined the bank previous to its being nationalized, he refused to approve certain real estate and personal loans held by the state bank approximating $20,000. Under the state banking laws the state bank was permitted to loan as much as $4,000 to one individual, while the national bank act would not permit a loan of more than $2,500 by a bank of the same capital, and before the bank could be converted it became necessary to dispose of these loans. Plaintiff at this time was treasurer of the town of Hennessey, and had on deposit to his credit as treasurer approximately $20,000 of town money. At the suggestion of Felt this city money was transferred from Westlake's account as treasurer to his individual account, and loans to approximately $16,000 were charged against same and taken out of the assets of the bank by Felt, and thereafter the bank was nationalized. Some time after this plaintiff was absent from the bank for two or three days on private business, and Felt, becoming displeased, mentioned the matter of deductions having been made from his salary while he was attending the stammering school, and also complained of the real estate loans and the condition of the city account. After some discussion the matter was apparently dropped again. Plaintiff believed that the relations between him and Felt were cordial and satisfactory, when in fact Felt was dissatisfied, and stated to others that he or plaintiff, one, had to sell out; that he had plaintiff where he had to do one or the other. There was at the time a proposition being considered of organizing another bank in the town of Hennessey, and Felt represented to plaintiff that he had been solicited to take stock and become an officer in the new bank. Felt on numerous occasions represented to plaintiff that certain large depositors were going to take stock in the new bank, and withdraw their deposits in plaintiff's bank, and represented that rumors were being circulated that the bank had some bad loans and was in bad condition, and that there was liable to be a run on the bank by depositors. Certain large deposits were in fact withdrawn, which reduced the reserve below the legal limit whereupon the bank sent its Kansas City correspondents a large amount of notes

for rediscount, which increased its reserve to the amount required by law. Felt continued reporting to plaintiff that rumors were being circulated with reference to the condition of the bank, and that depositors were going to withdraw their deposits, and at the suggestion of Felt, plaintiff, with Felt and another, went to Enid to consult with defendant Stephenson concerning the condition and seek his advice concerning a course that should be pursued. During the conversation Stephenson expressed the opinion that conditions were very bad, and that the condition of the bank was critical, and, without having been asked to purchase stock, volunteered the statement that he did not know whether he wanted to have any of the stock in his name. After failing to obtain assistance, the parties returned to Hennessey. and on the 23d of September plaintiff directed defendant Felt to take $25,000 or $30,000 of notes belonging to the bank to Kansas City and rediscount them so as to provide moneys for use in the event of a run on the bank. Felt took a lot of notes, and boarded a train which left Hennessey at 4:30 p. m., ostensibly bound for Kansas City. Instead of going to Kansas City, he stopped off at Enid, saw Letson and Stephenson, and conferred with them. In the meantime plaintiff, because of worry and uneasiness, had become nervous, confused, and restless, and, having lost two or three nights' sleep because of worry over conditions, had retired for the night, and, being unable to sleep, had taken opiates, which had finally induced sleep. About midnight Felt, Letson, and Stepenson came from Enid to the home of plaintiff, and aroused him from sleep, and Felt in the presence of the other parties made the statement that he had stopped off at Enid and discussed the situation with Letson and Stephenson, and stated, further. that the bank at Kansas City had written the bank at Enid, wanting to know what was the matter with the Hennessey bank; that they were wanting rediscounts, and that Stephenson, knowing the condition of plaintiff's bank, had written to the Kansas City bank that it was not safe for them to rediscount any more notes for it, and that it was useless for him to go to Kansas City to try and get any more rediscounts. In support of this statement Letson and Stephenson stated that they had had correspondence with the Kansas City bank, and that, knowing the condition of the Hennessey bank, they had written to the Kansas City bank the truth in regard to it as they understood it, and that it was not worth while for the Hennessey bank to try to get any

more rediscounts. They said, further, that they had come down and wanted to look over the notes and see in what condition they were to see if they could arrive at some way to help plaintiff out of his difficulties. Plaintiff responded "all right," and suggested that he call in the directors, to which the others objected, except they agreed to call in one Stetler, who was a director. The parties then went to the bank about 1 o'clock a. m., took out the note case, and went through it, examining the notes one by one, which took two or three hours. After this was completed, Stephenson says:

"You are in an awful condition. aren't you? You have got these real estate loans in your bank. What if the bank examiner would come and find those? These reports being circulated, you are likely to have a run on your bank. What are you going to do? You can't get any more discounts"

—to which plaintiff responded that he thought the bank was in good condition, and that, while there were some reports being circulated, he did not think there was any immediate danger of a run. To this Stephenson replied:

"Oh, yes; from what Felt tells me you are likely to have a run here tomorrow. You have got this money charged off in real estate loans; and. if there is a run on the bank, how are you going to pay this city money back? You are liable to be arrested for that and sent to the pen."

After examination of the notes had been concluded, Stephenson then asked if plaintiff intended to reopen the bank, and asked plaintiff what he wanted for his stock. Plaintiff then wanted to obtain from the Enid bank a loan of $16,000, as security for which he offered, in addition to his stock, about $16,000 worth of real estate notes in the bank, between $6,000 and $7,000 of personal notes which plaintiff held, and also offered a mortgage upon his home worth about $3,000, and property in Enid worth about $3,500, incumbered by a mortgage for $4,250, a brick building in Hennessey used as a garage, worth between $1,500 and $2,000, and about $1,000 worth of pianos at the invoice price, which belonged to a business conducted by plaintiff, which Stephenson refused, and pressed plaintiff to place a price upon his stock. Previous to this, as already stated, plaintiff had borrowed money from the Enid National Bank. and had often consulted Stephenson and Letson with reference to the conduct of his business, and the Hennessey bank had maintained a large deposit with the Enid National Bank. Stephenson

had frequently offered assistance to plaintiff, and advised him, whenever needing advice or assistance, to apply to him, and it was to avail himself of these promises that plaintiff sought the loan mentioned. Finally he placed a price of $150 a share upon his stock. The three laughed at him and made all manner of fun of him, and insisted that it was not worth anything; that plaintiff was in no condition to run a bank, and there was no one to run it for him, and, if the bank examiner should come and find these real estate loans, that he would probably be arrested for it, and Stephenson repeated his offer of $10,000. The offer was again refused, plaintiff saying to them that the stock had never before sold for less than $200 a share. The three kept insisting and worrying him, and he finally agreed to take the $10,000, believing that rumors were being circulated, as Felt had related to him, and believing that Stephenson and Letson had off any possibility of obtaining rediscounts at Kansas City, and believing that the bank was in a perilous condition by reason thereof. Out of the $10,000 which they allowed for the stock they took out $5,500 to pay the personal note of plaintiff due the Enid National Bank, and the balance of $4,500 was placed to his personal account, and immediately transferred to the city account, then they loaned plaintiff $16,000 to take up the balance of the city money which had been charged off in the real estate loans, and required him to sign a written statement, resigning as president of the bank. This loan was made on the same security, less plaintiff's stock, which they had refused to take, before plaintiff agreed to sell his stock.

It was proven at the trial that the parties whom Felt said had been circulating rumors concerning the condition of the bank denied having done so, and officials of the Kansas City bank testified that they had had no correspondence with Letson and Stephenson or the Enid National Bank concerning the condition of the Hennessey bank, and knew nothing of its being involved until after the sale was made.

It is urged that there is no evidence of a conspiracy in this case between Felt and Cashion, and therefore no evidence of a conspiracy to which the other defendants became parties, and hence the demurrer to the evidence should have been sustained. This does not follow. The facts recited clearly show a conspiracy between the defendants who prosecute this appeal to defraud plaintiff of his stock in the bank, and to oust him from his position as president.

It was not necessary to prove by direct evidence that said defendants actually came together and entered into a formal agreement to do the things complained of, but such an understanding may be shown by proof of the facts and circumstances from which the existence of conspiracy might be inferred. 12 C. J. 644.

Most often proof of a conspiracy from the very nature of things must be made by proof of circumstances because persons who enter into agreements of this kind usually are very astute to prevent evidence of their wrongful agreement and purpose being had, and often proof of circumstances which, when taken separately, might appear of slight import, when grouped together furnish strong and convincing proof of the ultimate object of the conspirators.

And in the admission of circumstantial evidence upon a charge of conspiracy great latitude is allowed. The jury should have before them, and are entitled to consider, every fact which has a bearing on and a tendency to prove the ultimate fact in issue which would assist them in arriving at a satisfactory conclusion, and it is no objection that the evidence may tend to prove many different transactions extending over any particular period of time, provided that all the facts proven have some bearing on and a tendency to prove the ultimate fact in issue. The limits to which evidence of this kind may be admitted should be left to the discretion of the trial court, and its ruling should not be disturbed when the evidence admitted tends, even remotely, to establish the ultimate fact of conspiracy. 12 C. J. 634, 635.

There was no error in the admission of testimony with reference to the change from a state to a national bank, nor as to the feeling existing between Felt and plaintiff, nor to plaintiff's purchase of shares while the bank was a state institution, nor as to the condition of plaintiff at the time of the sale of his stock to defendants, as all these circumstances were relevant and tended to establish the allegations of plaintiff's petition.

The fact that plaintiff may have done wrong in consenting that the moneys of the town of Hennessey to his credit as treasurer should be transferred to his private account, and the real estate and excess loans taken up and charged against said account, did not justify the defendants in practicing fraud and deceit upon him to obtain his property at less than its fair value. By doing wrong he did not forfeit title to his

property nor lose his right to the protection of the law against chicanery and sharp practices of others, nor his right to expect honest and fair dealings from his business associates.

That the facts recited constitute a conspiracy we think there is no doubt. By statute those who practice fraud and deceit upon another with intent to induce him to alter his position to his injury are liable for the amount of the damages inflicted. Section 993, Rev. Laws 1910.

And when defendant Felt repeatedly reported to plaintiff that rumors were being circulated as to the unsafe condition of the bank, and that depositors were threatening to withdraw their deposits, and when, on the night of September 23d, all three of said defendants represented to plaintiff that the Kansas City correspondent of the Hennessey bank would refuse to rediscount its paper, and represented to him that a run would be made upon the bank the following morning, these representations were made for the purpose of deceiving plaintiff and defrauding him of his stock, and such deceit and misrepresentations had the desired effect, for plaintiff believed them, and, believing that the condition of the bank was hopeless, and that relief could not be had from any source, accepted their proposition, sold his interest in the bank at the price fixed by them, and defendants Stephenson and Letson immediately loaned him the money which he had sought to borrow upon security which they had previously rejected.

No authorities are cited in support of the contention that the judgment should be reversed because counsel called plaintiff's wife as a witness. It is not claimed that she was permitted to testify, nor that any prejudice resulted from her being called, and we pass this assignment as being without merit.

We have examined the instructions given, and find that they fully and fairly state the law of the case and contain no prejudicial error. There was no error in refusing to give the instructions requested by defendant. In so far as they correctly state the law, the principles embodied therein were covered by the instructions given.

The verdict was for $20,000, which defendants claim is excessive. In his petition plaintiff asked for $15,000 actual damages and $25,000 exemplary damages. The court only submitted to the jury the matter of actual damages. Plaintiff did not seek damages for loss of position and salary, nor for damage to his reputation in the community, nor was this element of damages submitted to the jury; therefore the verdict should be limited to the elements sustained by the proof and submitted in the instructions. Plaintiff testified that he was the owner of 127 shares of stock in the bank, at the time of the sale to defendants, which were of the par value of $100 and of the actual value of $200. Accepting this estimate of the value to be true, the stock would be worth at the time $25,400. Deducting from this amount the $10,000 received by him would leave his actual loss measured by the value of the stock alone at $15,400.

The question of exemplary damages, not having been submitted to the jury, they were not authorized to consider same. Remund v. McCool, 50 Okla. 69, 150 Pac. 1055.

The verdict was therefore excessive in the sum of $4,400, and, if plaintiff will, within 20 days, remit this amount, the verdict and judgment will be modified in accordance therewith and affirmed.