## McCARTNEY v. SHORES.

No. 9495. Opinion Filed March 9, 1920.

(Syllabus by the Court.)

1. **Brokers—Commissions—"Procuring Purchaser" for Real Estate.**

Where a real estate broker is employed for a commission to be paid to procure a purchaser for property listed with him and presents to the principal a proposed purchaser, it is for the principal then to decide whether the person presented is acceptable, and if, without any fraud, concealment, or other improper practice on the part of the broker, the principal accepts the person presented and enters into an enforceable contract with him for the purchase of the property, the commission is fully earned.

3. **Same—Requisites—Enforceable Contract of Sale.**

An agreement by a real estate broker to procure a purchaser implies that the purchaser shall be one able to comply, or that the seller and the purchaser must be bound to each other in a valid contract. So where the agreement of the real estate broker is to make a sale or an exchange of property, his commission is earned when a contract is entered into by and between the vendor and the vendee, which is mutually obligatory upon the vendor and vendee even though the vendee afterwards refuses to execute his part of the contract for the sale or purchase.

Error from County court, Tulsa County; H. L. Standeven, Judge.

Action by J. A. Shores against A. J. McCartney. Judgment for plaintiff, and defendant brings error. Affirmed.

McGuire & Devereux, for plaintiff in error. Nelson & Blair, for defendant in error.

PITCHFORD, J. J. A. Shores instituted an action against A. J. McCartney for the recovery of commissions for the sale of certain property. The plaintiff was engaged in the real estate business in the city of Tulsa, Okla. The defendant was a resident of Tulsa and the owner of a residence located in that city. The parties entered into an oral agreement whereby McCartney listed with Shores his residence in the city of Tulsa for sale or trade, and agreed to pay plaintiff $60 as a commission for his services in selling or assisting in the selling or trading of the property so listed. Subsequent to their oral agreement, Shores secured a proposed purchaser in the person of E. M. Lowe. The said Lowe and McCartney entered into a written agreement whereby under certain conditions they were to exchange properties. This agreement in substance provided that Lowe agreed to sell and convey to McCartney a certain 160 acres of land, free and clear of all incumbrances, except a mortgage of $2,300, which McCartney, by their agreement, assumed and agreed to pay; also $1,800 in cash and a house and lot in Tulsa, being the house and lot listed with plaintiff. Each party to the contract agreed to furnish the other with a good and sufficient abstract of title to the property, which was to be conveyed. After this contract had been entered into by and between Lowe and McCartney, the latter discovered that there were other and additional incumbrances against the 160 acres; that is, that there were mortgages against the land—also that there was a further incumbrance by a court decree granting a divorce to Lowe's wife, giving her a large sum as alimony. After McCartney had discovered the additional incumbrances, and subsequent to the contract between himself and Lowe, each deposited a check for $50 in the American National Bank as a guarantee that he would carry out the terms of the contract. McCartney gave Lowe a reasonable time to remove the incumbrances, and in the meantime discovered that the check for $50 deposited by Lowe to secure the performance of the contract on his part was not good, Lowe not having funds in the bank to meet it and the bank on which it was drawn having informed McCartney that they would not cash it. It appears that Lowe was insolvent and unable to remove the incumbrances and to perform the contract set out, and as Lowe had failed to perform his part of the contract, McCartney declined to carry out the contract unless its terms were complied with. It appears, further, that on a fair valuation the exchange of the lands would not have been just or the lands of Lowe any adequate consideration for the land of McCartney, they being incumbered for more than the amount set out in the contract; that Mrs. Lowe, the divorced wife of E. M. Lowe. held a judgment against Lowe for $1,200, which was a lien upon the said lands; and

would not consent to the conveyance of the land. It was further agreed that at no time during the pendency of this transaction did the plaintiff, Shores, have any knowledge of any incumbrance upon the lands of E. M. Lowe. Judgment was rendered in favor of plaintiff, from which the defendant appealed.

It is evident from the agreed statement of facts that the plaintiff performed his part of the contract in finding a party who was ready and willing either to purchase or trade for the property listed. This party and McCartney were brought together by the efforts of the plaintiff. They entered into an agreement whereby as part of the consideration defendant was to exchange the property listed with plaintiff for the 160 acres of land belonging to Lowe. If Lowe, or the terms proposed by him for the exchange of the property were not satisfactory to McCartney, it would have been his duty to so notify the plaintiff, but when he accepted Lowe and entered into the agreement to make the exchange as shown, the plaintiff then became entitled to his commissions. The defendant should not be heard to say that he is not liable to the plaintiff because it was afterwards discovered that Lowe was financially unable to carry out his part of the contract. By this contract, Lowe became liable to McCartney for all damages sustained by the latter upon the failure of Lowe to perform his part of the contract. At the time the agreement was entered into between McCartney and Lowe, it appears that McCartney was satisfied, and by entering into this agreement he thereby determined for himself the ability of Lowe to perform his part of the agreement. For any violation on the part of Lowe, as we have seen, McCartney had his remedy for damages for any loss sustained by the failure of Lowe to fulfill his part. When this contract was entered into, the broker's services then and there ended. We are not informed as to the time devoted by the broker or the expenses he incurred in procuring a purchaser. If the purchaser offered by him was not satisfactory to his principal, it was the duty of the principal to decline to enter into this contract. Thereafter, if other parties had approached the broker and offered to buy the property listed with him, his answer would have been, "The property has been sold." His principal could very easily have protected himself against the commission by telling the broker at the time this agreement was entered into that no commissions would be earned unless the sale was finally consummated. Failing in that, the principal could have protected himself by requiring of the would-be purchaser a guarantee that the contract would be performed. We believe

this view of the law is in keeping with the authorities. Otherwise, a real estate broker could in almost all instances be deprived of his commissions; that is, after he had performed everything that was required of him, after he had brought the parties together, and they had entered into an independent contract between themselves, to which the broker was not a party, it would seem a hardship to hold that he would not be entitled to his commissions until all parts of the contract between the seller and purchaser had been fully completed.

In Yoder v. Randol, 16 Okla. 308, 83 Pac. 537, it was held:

"When defendants in error had fully performed their undertaking by producing a person ready, willing and able to purchase their employer's property, at the price and upon the terms stipulated, and Yoder, the landowner, had accepted the purchaser, so procured and entered into a binding and enforceable contract with him, the brokers then become entitled to their commission, and their right thereto was not defeated by the fact that the purchaser refused to complete the transaction because of a defect shown by the abstract furnished by the landowner."

In Francis v. Baker, 45 Minn. 83, 47 N. W. 452, the general rule is declared to be:

"Where a real estate broker, employed, for a commission to be paid, to procure a purchaser for property, presents to the principal a proposed purchaser, it is for the principal then to decide whether the person presented is acceptable, and if, without any fraud, concealment, or other improper practice on the part of the broker, the principal accepts the person presented, and enters into an enforceable contract with him for the purchase of the property, the commission is fully earned."

In Scully v. Williamson, 26 Okla. 19, 108 Pac. 395, Mr. Justice Hayes, in delivering the opinion of the court, said:

"Had defendant embodied in his contract of employment with the corporation a stipulation that he should not be liable for any commission unless a sale was finally consummated and the property transferred, then the fact that the corporation, although it made effort to have the purchaser carry out his contract, failed to secure the performance thereof, would be fatal to plaintiff's right of recovery; but it is not made to appear by the pleadings of either party, or by evidence, that there was such a stipulation in the contract of employment."

So, in the instant case, when the plaintiff and defendant entered into their agreement whereby the defendant listed with the plaintiff his residence in the city of Tulsa for sale or trade, and the defendant and Lowe entered into a written agreement whereby each was bound, and it subsequently developed

that there were additional incumbrances on the farm which Lowe proposed to trade to the defendant and it appeared that at no time during the pendency of this transaction did the plaintiff have any knowledge of these incumbrances and made no representations to McCartney, nor practiced any fraud to induce him to enter into the contract with Lowe, his right to his commissions was not affected by reason of the failure of Lowe to perform his part of the contract. In Kalley v. Baker, 132 N. Y. 1, 29 N. E. 1091, it was said·

"When, through the procurement of a broker employed to effect an exchange of real estate, a contract for the exchange has been agreed upon and entered into between his customer and the person with whom the exchange was to be effected, in the absence of any express agreement to the contrary the broker is entitled to his commissions."

In Wilson v. Mason, 158 Ill. 304, 42 N. E. 134, 49 Am. St. Rep. 162, it is said:

"An agreement by a real estate broker to procure a purchaser not only implies that the purchaser shall be one able to comply, but that the seller and the purchaser must be bound to each other in a valid contract. So, where the agreement of the real estate broker is to make a sale, his commission is earned when a contract is entered into which is mutually obligatory upon the vendor and vendee, even though the vendee afterwards refuses to execute his part of the contract of sale or purchase."

In Moore v. Irvin (Ark.) 116 S. W. 662, it was said:

"The financial inability of the purchaser to perform his contract to purchase real estate does not deprive the broker of his commission where a binding contract for sale is effected through his agency, in the absence of fraud or warranty, on his part, of the customer's financial ability."

See note, 20 L. R. A. (N. S.) 1168.

In Hutton v. Stewart (Kan.) 135 Pac. 681, the court said:

"We think the trial court correctly ruled that the plaintiffs were entitled to their commission, notwithstanding any default of Harmon. The contract was valid and binding; Stewart could have maintained an action on it for specific performance or for damages. If Harmon proved to be unable to perform and to be financially irresponsible, this did not affect the plaintiff's right to a commission (unless they had made some misrepresentation on the subject, which is not charged), inasmuch as Stewart had accepted him as a purchaser by entering into a contract with him. Lyman v. Wagner, 90 Kan. 12, 132 Pac. 988, and cases there cited; note, 20 L. R. A. (N. S.) 1168; note, 11 Ann. Cas. 786; Nagl v. Small (Iowa) 138 N. W. 849."

" 'When the broker produces a purchaser who is ready and willing to enter into a contract, it is for the principal to decide whether the person presented is acceptable, and the broker's commission depends upon such acceptance; but if the principal does accept him, either upon the original or modified terms, and a valid contract is entered into, he becomes a purchaser within the meaning of the contract of the broker, and the duties of the latter are at an end, and the commissions are earned as soon as an enforceable contract is executed.' Note, L. R. A. (N. S.) 593, 616."

Counsel for defendant cite us to the case of Condict v. Cowdrey, 139 N. Y. Ct. Ap. 273. The facts in that case and the instant case are entirely different. The agreement in that case between the broker and the owner of the real estate was:

"I hereby agree to pay you a commission of 10 per cent on the price I may accept for the 435,000 acres of land in Eastern Kentucky belonging to me if sold through your agency. I hereby acknowledge your agency in bringing Jere Baxter and his associates to me, whereby a refusal until September 10, next was given by me."

We quote from the body of the opinion as follows:

"If this evidence is true, what appears upon the face of the papers to have been an agreement of sale is in reality a privilege to purchase at a fixed price, and to refuse to purchase upon the forfeiture of a definite sum, or what seemed to be an agreement of sale, is in truth, a mere option to purchase. If this evidence is true, the alleged vendees never bound themselves to take the land, but preserved their freedom to refuse, and the acceptances in Mrs. Cowdrey's hands were so much waste paper and incapable of being enforced. Her sole right was to retain the money paid and the alleged vendees were never bound to take title or pay the purchase money. In other words, there was no absolute contract of sale, but merely an option."

In the case at bar there was nothing to prevent the defendant from suing Lowe for damages.

Another case relied on by defendant is that of Sibbald v. Bethlehem I. Co., 83 N. Y. Ct. Ap. 378. We have read this case carefully, but fail to find wherein the same in any particular sustains the defendant's contention. On the contrary, as we understand the opinion, it supports the contention of the plaintiff. There the court said:

"In Barnhard v. Monnot it was said that the duty of the broker consisted in bringing the minds of the vendor and vendee to an agreement, (16 How. Pr. 440.) In Wiley v. Marine Natl. Bank (61 N. Y. 416) it was held that to entitle the broker to commissions, he must produce a purchaser ready and willing to enter into a contract on the employer's terms. This implies and involves the agreement of buyer and seller, the meeting of their minds produced by the agency of the broker."

In Moses v. Bierling, 31 N. Y. 461, it was declared that the authorities clearly estab-

lished the proposition that until the broker has finally discharged the obligation assumed in the contract with his principal, he is not entitled to his agreed commission, and that obligation is fulfilled only when he produces a party ready to make the purchase at a satisfactory price.

In Glentworth v. Luther, 21 Barber, 145, it was declared that commissions were earned when the broker produced to his principal a party with whom the owner was satisfied and who contracted for the purchase at an acceptable price.

We are of the opinion that the judgment of the trial court should be affirmed, and it is so ordered.

All the Justices concur.