## THORNBURGH v. HAUN.

No. 9732—Opinion Filed June 22, 1920.

Rehearing Denied July 24, 1920.

(Syllabus by the Court.)

1. Brokers—Real Estate Agents—Right to Commission.

Where a real estate broker furnishes a purchaser ready, willing, and able to buy upon the terms and conditions proposed by the seller, such agent has earned his commission, and if thereafter the seller refuses to comply with his contract, the agent is not required to procure or tender to the seller an enforceable contract.

2. Appeal and Error—Verdict—Sufficiency of Evidence.

In a civil action, triable to the jury, where there is competent evidence reasonably tending to support the verdict of the jury, and no prejudicial errors of law are shown in the instructions of the court, or its ruling on law questions presented during the trial, the verdict and finding of the jury will not be disturbed on appeal.

Error from Superior Court, Okmulgee County; R. E. Simpson, Judge.

Action by G. F. Haun against Wright Thornburgh for real estate broker's commission. Judgment for plaintiff, and defendant brings error. Affirmed.

L. L. Cowley, for plaintiff in error.

Morgan, Pinkston & Hepburn, for defendant in error.

JOHNSON, J. This is an appeal from the superior court of Okmulgee county, sitting at Henryetta.

On July 11, 1917, the defendant in error, who was the plaintiff below, filed his petition in said court against the plaintiff in error, who was the defendant below, which petition alleged, in substance:

"That plaintiff was a real estate agent at Henryetta, Oklahoma, and that the defendant, a resident of Okmulgee county, Oklahoma, was owner of certain real estate situate in said county, to wit: south half (S. ½) of northwest quarter (N.W. ¼) of section thirty-two (32) township twelve (12) north,

range thirteen (13) east of I. M. That on the 8th day of February, 1917, Wright Thornburgh listed with the plaintiff and authorized him to procure a buyer for the same at $25.00 per acre, or a total of $2,000 net, to defendant, with the further agreement that plaintiff was to receive as his commission any sum for which he might sell the land above the sum of $2,000; that thereafter said plaintiff procured a buyer for said land, W. S. Evans, who was then and there ready, able and willing to buy said land for the total sum of $2,800, and that the said W. S. Evans paid said plaintiff, as an advance payment on said land, the sum of $100. That the plaintiff immediately notified said defendant that he, the plaintiff, had found said purchaser who was ready, able and willing to purchase said property upon the terms and conditions agreed upon by and between said plaintiff and said defendant, but that the defendant refused and still refuses to sell said land to W. S. Evans as per said agreement. All to the great damage of said plaintiff in the sum of $800, and that the refusal of said defendant to sell said land to W. S. Evans was without cause and with the knowledge that the refusal was to the great damage of said plaintiff."

The prayer of said petition was for $800 and costs. The defendant answered by general denial. The cause was tried to a jury and resulted in a verdict in favor of the plaintiff in the sum of $645, for which sum the court rendered judgment, and in due time this proceeding in error was commenced by the defendant filing his petition in error in this court, a copy of case-made attached. His assignments of error are: (1) Overruling motion for new trial; (2) verdict is contrary to law; (3) was contrary to the evidence; (4) was contrary to the evidence and a compromise verdict; (5) contrary to the law and evidence; (6) errors of law occurring at the trial; (7) error in exclusion of evidence; (8) in not sustaining the demurrer to the evidence; (9) in not sustaining objection to the introduction of the evidence at the commencement of the trial; (10,11) erred in refusing to give requested instructions; (12, 13) in giving instructions Nos. 2 and 3; (14) in admitting evidence objected to by the defendant.

Counsel for plaintiff in error discusses in his brief most of the foregoing assignments under one proposition, concerning which he says:

"All of the above assignments of error depend upon the answer to the following question: 'Is it necessary for a real estate agent, to recover a commission for the sale of real estate, to procure and present to the seller, signed by a purchaser, who is ready, willing and able to buy, an enforceable contract in

writing, binding the purchaser to take the land according to the terms and conditions agreed upon?' If the answer to the above question is 'yes,' then the above assignments of error are well taken and the judgment of the lower court must be reversed and this cause remanded to the lower court with directions to grant a new trial. If the answer to the above question is 'no,' then the above assignments of error are not well taken and the defendant must look to the other assignments of error for a reversal of the judgment in this cause."

The plaintiff testified in his own behalf as follows:

"Q. Tell the jury, Mr. Haun, in your own way, as briefly as you can, what transaction or dealings you had with Mr. Thornburgh, if any, in relation to his eighty, up north of town here?

"A. I had a purchaser that wanted to buy land north of town, Mr. R. G. Stone; I was informed that Mr. Thornburgh owned the land on which the Okmulgee Coal Mine was located, and I called him up over the telephone one day, one evening, I think about the second, or somewhere, of February, this year, told him my name was Haun, that I was in the real estate business at Henryetta, that I had a purchaser for an eighty acre tract of land; understood he owned such north of here, asked him, would he sell it; he said 'yes,' and I told him I would be up to see him. I went to Okmulgee on the day following, and went into Mr. Thornburgh's office.

"Q. About when was that, Mr. Haun?

"A. As near as I can say, I think on the 3rd of February.

"Q. The 3rd of February?

"A. Yes, sir.

"Q. All right, go ahead.

"A. I informed myself where Mr. Thornburgh's office was located, went in, found Mr. Thornburgh, never had met him, introduced myself to him, told him I was the real estate man at Henryetta that had 'phoned him about his tract of land north of town, and asked him what he wanted for it. He told me, 'What do you think that land is worth?' I told him I had looked it over, cut up by ravines and the railroad tracks, I figured about twenty-five dollars an acre. His reply was that was what he figured it was worth, and he said, 'You sell the land for that net to me, and get your commission above that.' I asked him how much commission he thought I ought to have. He replied, it didn't matter to him if it was a hundred dollars an acre, 'sell it for twenty-five net to me.' I said, 'I will price the land for thirty dollars an acre.' He said, 'Go to it.' —used that word. I came back home and called Mr. Stone—

"By Mr. Cowley: What Stone is that?

"A. R. G. Stone. Mr. Stone decided to take the eighty, and wanted an eighty adjoining it, he just merely wanted that for pasture land; I told him I would try to get that, and I called Mr. Thornburgh and he wanted to make some reservations—building some houses for his coal miners; I asked him what he would sell it for, 'twenty dollars?' I told him I would have to get twenty-two-fifty an acre. He said, 'alright.' I told him Mr. Stone·said he would give that and I asked Mr. Thornburgh to send down the abstract. Well, a few days went by, and the abstract didn't come, and I called him up; he said Mr. Harlan Read had those abstracts and he was out of town, I think in New Orleans, and he couldn't get them to me until his return. In the meantime, Mr. Stone said, 'I have talked to some of my friends regarding that land,'—Q.: Don't tell that. You didn't close the deal with Mr. Stone? A. Mr. Stone didn't take the land on account of the smelter smoke, he backed out. Then Mr. Evans, another party, talked about buying the land, and the land was priced to Mr. Evans at thirty-five dollars an acre. He looked it over; he said he wanted the north eighty. In about a week he came into my office one evening, said he had come up to accept that land, wanted me to make up a check of some kind, I believe the Citizens' Bank of Okmulgee—By Mr. Cowley; Objected to as incompetent, irrelevant and immaterial, and ask that it be stricken and the jury admonished not to consider it. By the Court: Overruled. By Mr. Cowley: Exception. A. I wrote out a check, and he signed a check for a hundred dollars. I told him, 'I won't accept it until I call Mr. Thornburgh; have a seat.' I called him over the 'phone, told him Mr. Evans had bought the land at thirty-five an acre, and paid a hundred dollars to hold the deal. I asked him to have the abstract sent down; he said he would send the abstract immediately. Several days passed and the abstract didn't come, and I went up there to his office, and he said he couldn't sell the land, he was selling coal under the land, a coal company had a lease on it. I told Mr. Evans that Mr. Thornburgh wouldn't close the deal. In the meantime he went to work and built a house on this land; Mr. Thornburgh didn't give him any authority to build the house, but he went out—so the coal deal failed, didn't go through. * * *"

Mr. T. L. Taylor testified for the plaintiff that he was in the plaintiff's office and heard the conversation between the plaintiff and Mr. Evans, including the telephone conversation between the plaintiff and the defendant, which corroborated plaintiff's testimony fully as to what occurred.

Mr. Evans, purchaser, testified for the plaintiff as to the contract of purchase, fully corroborating the testimony of the plaintiff:

and concerning what he did after his con-tract of purchase, he testified as follows:

"Q. What did you do? A. I went up there and put a house on it. Q. What did Mr. Thornburgh do?. A. We came back home, and was fixing to move up here, and when we got ready to move, why, Mr. Thornburgh had moved somebody in the house. Q. In your house? A. Yes, sir; he was in possession of it. Q. His tenant still in it? A. Yes, sir—By Mr. Cowley: Objected to as incompetent, irrelevant, and immaterial. By the Court: Sustained. By Mr. Hepburn: I withdraw the question. Q. Uncle Billy, were you able, ready, and willing to pay Mr. Thornburgh for his land, if he had delivered the deed? A. Yes, I—By Mr. Cowley: Objected to as incompetent, irrelevant, and immaterial, and leading and suggestive, and defendant moves that the answer be stricken out. By the Court: Overruled. By Mr. Cowley: Save us an exception. Q. You say you were? A. Yes. Q. If he had furnished you a deed? A. Yes, sir. Q. Did he ever furnish you a deed? A. No, sir. Q. And has not furnished it to you yet? No, sir."

The defendant's testimony was in sharp conflict with that of the plaintiff. He denied that he ever agreed to sell the land for $25 an acre, saying he priced it at $25 and agreed to give the plaintiff $100 commission to sell at that price, and denied in toto all knowledge of the deal with Evans as testified to by the plaintiff. Concerning the telephone conversation, he testified as follows:

"Q. But you are positive regarding the Uncle Billy hundred dollars, that didn't take place over the 'phone? A: He might have said it, if he did, if he did say that, I told him I couldn't sell it. Q. Now, as I understand you, Mr. Thornburgh, this conversation didn't take place at all? A. It didn't; I didn't talk about the sale. Q. Did he ring you up that afternoon and tell you he had sold the land at thirty-five dollars an acre? A. No, sir; never did. Q. That conversation didn't take place? A. No such conversation. We had various conversations. Q. What I am trying to get at—you deny absolutely the hundred dollar telephone conversation on the afternoon of February 24th, do you? A. Absolutely. Q. You know that didn't take place? A. That conversation didn't take place; he might have called me; if he did, I told him I couldn't sell it. Q. You say he might have talked to you on the afternoon of February 24th? A. He might have done so; I can't say that he didn't. Mr. Hepburn: That's all."

At the conclusion of the testimony, the defendant demurred to the same and requested a peremptory instruction to the jury, which was refused by the court and exception saved by the defendant. The material part of the court's instructions to the jury was as follows:

"Gentlemen of the jury, you are instructed that if you find from a preponderance of the evidence in this case, that the plaintiff, G. F. Haun, had an agreement with the defendant, Wright Thornburgh, to sell eighty acres of land belonging to defendant, described as the south half of the northwest quarter of section 32, township 12 north, range 13 east, in Okmulgee county, Oklahoma, and that on or about the 8th day of February, 1917, the defendant listed said property with the plaintiff for sale and agreed with plaintiff that he should find a buyer for said land at a price of $25 per acre, net to the defendant, Wright Thornburgh, with the further agreement that the plaintiff was to receive as his commission any sum which he could sell said land over and above said sum of $25 per acre, and that in pursuance of said agreement, the plaintiff procured a buyer for said land on or about the 24th day of February, one W. S. Evans, who was ready, able and willing to buy said land for the sum of $35 an acre, or the total sum of $2,800 for the tract; and that at the same time, the said purchaser, W. S. Evans, paid to plaintiff the sum of $100.00 as a part payment on said land, and that this payment of $100.00 was made after a telephone conversation took place between the plaintiff and defendant, and that defendant accepted said sum as part payment on the purchase price, and that said sum was paid with the knowledge and consent of the owner of the land, Wright Thornburgh, and if you further believe from a preponderance of the evidence, that the defendant, Wright Thornburgh, instructed the plaintiff, G. F. Haun, to sell the above-described land upon the terms herein set out, and that he agreed to all the terms and conditions of said sale to the purchaser, W S. Evans, and that he afterwards refused to carry out the terms of said agreement, and refused to furnish the purchaser with a deed to the land, and that upon and owing to his refusal, the trade was not made, and the sale was not consummated; and if you further believe from a preponderance of the evidence, that by reason of the fact that said sale was not completed, the plaintiff in this case, G. F. Haun, was damaged in the sum of $800.00 or any other sum, then your verdict should be for the plaintiff, in any sum to which you may find he is entitled, not exceeding the sum of $800.00. If on the other hand, you believe that the plaintiff has failed by a preponderance of the evidence to make out his case, then your verdict should be for the defendant."

2. "You are instructed that if you find from a preponderance of the evidence, that the defendant authorized the plaintiff to find a purchaser for his said land, at a certain stipulated price per acre, and if you further find, from a preponderance of the evidence, that the plaintiff did furnish a purchaser,

ready, willing and able to purchase said land upon the terms and conditions proposed by the defendant, then your verdict must be for the plaintiff and you should fix the amount of his recovery at any sum to which you think he is entitled, not exceeding the sum of $800.00."

The plaintiff's cause of action against the defendant is one for damages against the owner of property for failure to comply with his contract to sell. It is such from the pleadings and the evidence, and was tried and submitted to the jury upon that theory, and we think comes clearly within the rule announced by this court in the cases of Robinson v. Okla. Fire Insurance Co., 54 Okla. 52, 155 Pac. 202, and Bleecker v. Miller et al., 40 Okla. 374, 138 Pac. 809. In the latter case it was said:

"Defendant contends that the trial court erred in giving to the jury instructions Nos. 4, 5, and 6, for the reason that the same do not tell the jury that it is necessary for plaintiffs to have procured or tendered to defendant an enforceable contract, executed by the proposed purchaser. We do not understand that this is the law. When the defendant sold the land to another purchaser, he, by his own act, stopped the transaction, and it would have been an idle and useless ceremony to have asked the proposed purchaser to execute a contract of purchase to the property which had already been sold to another. * * * The instructions, among other things, tell the jury that it was the duty of the plaintiffs to furnish a purchaser who was ready, able and willing to purchase the property upon the terms and conditions prescribed by the defendant. The defendant contends that this purchaser was not ready, able, and willing to buy this property. That was a question of fact submitted to the jury under proper instructions, and there is evidence in the record tending to support the conclusions reached by the jury."

Likewise in the instant case it was the theory of the plaintiff that the defendant breached the contract of sale and refused to deliver the deed. His testimony tended to support his theory, and the verdict of the jury was in his favor. In these circumstances, it would have been an idle ceremony to require the plaintiff to procure from the purchaser a contract in writing. Smith et al. v. Autrey et al., 69 Oklahoma, 169 Pac. 623; Strickland v. Palmer, 70 Oklahoma, 172 Pac. 932.

The defendant's last assignment of error is that the court erred in overruling his motion for a new trial. The grounds urged in support of this assignment are, in substance, those usually contained in a statutory motion for a new trial.

As we have seen, the record discloses that the testimony in the case was conflicting. The issues involved were properly submitted to the jury, and in these circumstances the verdict of the jury will not be disturbed by this court upon appeal. We are clearly of the opinion that the trial court committed no error in overruling the defendant's motion for a new trial, and for the reason stated the judgment of the trial court is affirmed.

HARRISON. V. C. J., and PITCHFORD McNEILL, and BAILEY, JJ., concur.