## ROSENBERG v. OLSAN.

No. 10681—Opinion Filed Dec. 19, 1922.

Rehearing Denied Feb. 20, 1923.

(Syllabus.)

1. **Trial—Demurrer to Evidence—Consideration.**

The test applied to a demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn from the evidence, are admitted. The court cannot weigh conflicting evidence, but must treat the evidence as withdrawn which is most favorable to the demurrant.

2. **Brokers—Real Estate Commissions.**

Where a real estate broker furnishes a purchaser ready, willing, and able to buy upon the terms and conditions proposed by the seller, such agent has earned his commission, and, if thereafter the seller refuses to comply with his contract, the agent is not required to procure or tender to the seller an enforceable contract.

3. **Same—Action for Commission on Sale of Oil Lease—Demurrer to Evidence.**

Record examined, and held, the trial court erred in sustaining a demurrer to the evidence offered on behalf of plaintiff.

Error from District Court, Tulsa County; R. W. Higgins, Assigned Judge.

Action by Henry J. Rosenberg against Joseph Olsan for broker's commission on sale of oil lease. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Randolph, Haver & Shirk and H. M. Gray, for plaintiff in error.

Samuel A. Boorstin and Moss & Owen, for defendant in error.

PER CURIAM. This action was commenced in the district court of Tulsa county by Henry J. Rosenberg against Joseph Olsan to recover $6,250 as damages for the breach of a contract to sell a certain oil and gas lease. The petition alleged plaintiff was engaged by defendant to sell an oil and gas lease on 50 acres of land for the sum of $125,000, and agreed that the plaintiff should receive as his pay for such services all he might get from the purchaser in excess of $125,000. Plaintiff alleged he accepted said employment and brought the defendant and C. B. Shaffer together and the latter offered the defendant the sum of $125,000 and informed defendant he would pay the commission of plaintiff of five per cent., which was $6,250, and defendant refused to sell and convey the same. To this petition the defendant filed an answer in the nature of a general denial. The case was tried to a jury, and after the plaintiff introduced his evidence the defendant demurred to the same, which demurrer was sustained by the court.

An appeal was regularly lodged in this court, and the only question for consideration by the court is whether the court erred in sustaining the demurrer of defendant to the evidence of plaintiff. In considering this question this court in a long line of cases has stated as follows:

"The test applied to a demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn from the evidence, are admitted. The court cannot weigh conflicting evidence, but must treat the evidence as withdrawn which is most favorable to the demurrant." Smith v. Rockett, 79 Okla. 244, 192 Pac. 691; Felt v. Westlake, 68 Okla. 294, 174 Pac. 1041.

This court in a long line of decisions has announced the following rule:

"Where a real estate broker furnishes a purchaser ready, willing, and able to buy upon the terms and conditions proposed by the seller, such agent has earned his commission, and, if thereafter the seller refused to comply with his contract, the agent is not required to procure or tender to the seller an enforceable contract." Thornburgh v. Haun, 79 Okla. 103, 190 Pac. 1083; Pliler v. Thompson, 84 Okla. 200, 202 Pac. 1016; Strickland v. Palmer, 70 Oklahoma, 172 Pac. 932.

With these principles of law well settled it will be necessary for us to examine the evidence, and ascertain whether there is any evidence to support the allegations of the petition that plaintiff furnished a purchaser ready, willing, and able to buy upon the terms and conditions proposed by the defendant. We think it is only necessary to look to the evidence of J. K. D. Shaffer, which is as follows:

"Q. Now, did you have any conversation with Mr. Olsan? A. After I looked at the property I had. Q. When was that? A. On or about the 20th of December. Q.

Where, Mr. Shaffer? A. Tulsa Hotel. Q. Was that before or after the Gifford conference, if you know? A. It was after. Q. How much after, do you know? A. Just—not over a day. Q. Who was present at the conference at which you attended? A. There was Mr. Olsan and Mr. Rosenberg and Mr. Gifford and myself. Q. Mr. Shaffer, what was said at that conference? A. I told Mr. Olsan that I had looked over the property and would take the property at his figures. Q. What was that? A. At $125,000. He says, 'Well,' he says, 'I don't believe I will take it now,' he says, 'the property is worth a good deal more money.'_ I says, 'Well, didn't you put this up for sale with Rosenberg and this gentleman?' He says, 'Yes.' I says, 'What did you want a fellow to run around all over the country and freeze himself to death and then come back and take a sale down?' He said he was sorry to inconvenience me so much, but he didn't feel he could take that much money. Q. What was said by you, if anything, with reference to paying him the money? A. I told him that I was willing to pay him $125,000. Q. At that time? A. At that time. Q. You were in a position to do that? A. I was. Q. And it was for Mr. Shaffer, C. B. Shaffer? A. It was for C. B. Shaffer. Q. Now, did Mr. Olsan refuse to convey you the property? A. He did. Q. Or convey Mr. C. B. Shaffer the property? A. He did. Q. Did he give any other reason why he did not sell Mr. Shaffer the property? A. Not only that it was not enough money. Q. Did he say anything about the outstanding interest? A. Not to me. Q. Did he say anything about the title? A. Not anything. Q. Have you any interest in this lawsuit, Mr. Shaffer? A. Not a bit. Q. With reference to Mr. Rosenberg's commission, who was to pay that? A. I agreed to pay him five per cent. of the purchase price. Q. $6,250? A. Five per cent. of $125,000, —$6,250. Q. That was to be paid by Mr. Shaffer through you? A. Yes, sir. Q. Over and above the $125,000? A. It was. Q. For the property? A. It was. Q. That was the seven-eighths working interest? A. Seven-eighths working interest. Mr. Olsan knew that was the interest you were willing to buy? A. Yes, that is all I had heard talked of."

This evidence, when the test is applied to the same as announced in the case of Smith v. Rockett, supra, is sufficient to submit the case to the jury upon the theory announced in the cases of Thornburgh v. Haun, supra, Strickland v. Palmer, supra, and Pliler v. Thompson, supra.

The defendant in error presents numerous questions based upon other portions of the evidence regarding the title, and as to whether the purchaser offered to accept the property upon the exact terms offered by the defendant. These questions would be proper to be considered by the jury under proper instruction, but in considering the demurrer to the evidence the court cannot weigh conflicting evidence, but must treat as withdrawn that portion of the evidence most favorable to demurrant.

For the reasons stated, the judgment of the trial court is reversed, and the cause remanded, with instructions to grant the plaintiff in error a new trial.

JOHNSON, V. C. J., and KANE, KENNAMER, NICHOLSON, and COCHRAN, JJ., concur. McNEILL, J., not participating.