## SCOTT v. KENNEDY.

No. 20430.    Opinion Filed Oct. 13, 1931.

I. E. Hill and Fred J. Evans, for plaintiff in error.

E. B. McMahan, for defendant in error.

ANDREWS, J. This is an appeal from a judgment of the district court of Cimarron county in favor of the defendant in error, plaintiff in the trial court, against the plaintiff in error, defendant in the trial court. The parties hereinafter will be referred to as plaintiff and defendant.

The plaintiff, a real estate agent, brought this action against the defendant, the owner of certain real estate, to recover a money judgment for a sum alleged to be due the plaintiff from the defendant as a commission on the sale of real estate by the plaintiff for the defendant.

The plaintiff alleged in his petition that the defendant, "verbally over the telephone," "employed and authorized" the plaintiff to sell certain real estate for the sum of $5,-000 and agreed to pay him "as his commission and compensation five per cent. of the selling price of said property, or the sum of $250"; that the plaintiff duly performed all the conditions on his part and procured a purchaser for the property, who was able, ready, and willing to buy the same, and duly notified the defendant thereof; and that the defendant failed, neglected, and refused to close the sale with the purchaser and to pay the commission due the plaintiff.

A general demurrer thereto was overruled and a verified general denial of the allegations thereof was filed as an answer thereto.

The plaintiff testified that he had a conversation with the defendant as follows:

"A. I called Mr. Scott over the 'phone,—he was in Amarillo—in care of the Schott Hotel, and talked with him in regard to the listing of these lots on January 31, 1927, about nine o'clock in the morning. Q. Tell the jury, Mr. Kennedy, what that conversation was? A. I asked—I had found out Mr. Scott owned the lots and I asked him if he cared to sell them and he said he hadn't thought of selling them and I said 'Well, you would sell them, wouldn't you?' He said, 'Yes, I would sell them'. I says, 'Why not put a price on them. I can sell them in the next two days,'—so he said he would take $5,000 for them. I asked him if he would allow me five per cent. commission for

selling them and he said he would. I told him I thought I could sell them within the next two days. Mr. Scott said he was going to Oklahoma City to be gone two or three days and I came over here to Boise City and the next day I sold them to Mr. Ennis for $5,000. Q. Now, you say you asked him if he would be willing to pay you a commission of five per cent.? A. I did. Q. What was his reply to that? A. He said that he would. Q. Where were you when you had this conversation? A. I was in my office at Guymon."

That the next day he found a purchaser for the property and, as the agent of the defendant, entered into a written contract with him for the purchase thereof; that he notified the defendant of the sale by a telegram as follows:

"Lots eighteen, nineteen, twenty block thirty-five Boise City sold for five thousand dollars. Forfeit up. Letter of instructions follows"

—and by letter as follows:

"Confirming my telegram to you yesterday, beg to advise that I am enclosing you a warranty deed covering lots 18, 19 and 20, block 35, Boise City, Okla., and shall ask that you sign the deed and mail to the City National Bank of Guymon, Okla., where contract and forfeit are escrowed.

"You will also please mail your abstract with the deed to the bank or to me and I will have it continued so that the purchaser can examine same. I have given you 30 days in which to get the abstract continued and certified because of the fact that the abstractors at Boise City are so far behind with their work. If it takes less time, we can close the deal that much more quickly."

That the purchaser procured by him was ready, able, and willing to purchase the property; that he did not present the defendant with the written agreement of the purchaser to buy the property; that he did not present the purchaser to the defendant; that he did not think it necessary to do those things; that the defendant did not answer the telegram or the letter; that the defendant did not sell the land to the purchaser, and that the defendant did not pay the agreed commission to the plaintiff.

The written contract between the plaintiff and the purchaser provided that:

"Second party hereby agree to purchase said real estate as described in article 1 of this instrument, and on the terms and conditions as named in article 2 of this instrument, and hereby pay two hundred and no/100. . . dollars ($200.00), earnest money, which is a part of the purchase price, the receipt of which first party hereby acknowl-

edge, and second party agrees to complete the purchase as above stated in article 2 or forfeit the $200."

That contract was on a printed form, to which was added "or forfeit the $200," as it appears in that paragraph.

The plaintiff's testimony was corroborated by that of other witnesses.

At the conclusion of the plaintiff's evidence, the defendant demurred thereto and moved the court to instruct the jury peremptorily to find for the defendant. The demurrer and the motion were taken under advisement by the court, the judge stating that he preferred to withhold his ruling until all of the evidence was in. At the conclusion of all of the evidence, both the demurrer and the motion were overruled by the court.

It will be noted that the defendant lived at Amarillo and that the land was located in Boise City. The plaintiff and the purchaser lived at Guymon. The contract of sale between the plaintiff and the purchaser provided for the deposit of the papers and the money in escrow in a bank at Guymon, Okla. The contract, taken as a whole, shows it to be a mere option for the purchase of the real estate with a provision for the forfeiture of the $200 deposited by the purchaser as "earnest money" if the purchase was not completed. It was not an unconditional agreement to purchase the real estate. By the addition thereto of the language "or forfeit the $200," it is apparent that the purchaser did not contract to be bound further than to forfeit the $200. If the agreement between the plaintiff and the defendant was as stated by the plaintiff, there was nothing therein that required the defendant to send the deed to Guymon, Okla., and there was nothing therein to require the defendant to furnish an abstract of title or to give any purchaser any time for the examination of the title. If the agreement was as stated by the plaintiff, the plaintiff was authorized to sell the real estate for cash.

If the plaintiff sold the real estate for $5,000 cash, it was his duty to take or send the purchaser to the place of residence of the defendant with the money to complete the purchase, or, if he did not want to go to that trouble, to take or send to the defendant a contract, executed by the purchaser, which would bind the purchaser to take the real estate and pay the purchase price of $5,000 when it was signed by the defendant. The plaintiff did neither of those

things. The purchaser testified that he was willing to go ahead and purchase the lots and pay for them as he had agreed to under the terms of his contract, but he did not testify that he was ready, willing, and able to purchase the property and to immediately pay $5,000 cash as a consideration therefor. The contract of purchase was never sent to defendant and the defendant never saw the same until the time of the trial of this action.

The purchaser was not presented to the defendant and neither he nor any one else ever tendered to the defendant $5,000 cash as a consideration for a deed to the property, or offered to pay that amount to the defendant, except as the offer was made in the written agreement under the conditions therein made, which written agreement was never exhibited to the defendant.

The rule that a broker is not entitled to compensation for the procuring of a customer, who takes an option on the property, by the terms of which he may, at his option, either accept the property or forfeit the earnest money, is stated in 9 Corpus Juris, page 603, and in Aigler v. Carpenter Place Land Co., 51 Kan. 718, 33 P. 593; Brown v. Keegan, 32 Colo. 463, 76 P. 1056; Scott v. Merrill's Estate, 74 Ore. 568, 146 P. 99, and the cases cited in support of the text in Corpus Juris. In Gilliland v. Jaynes, 36 Okla. 563, 129 P. 8, this court held:

"In order for a real estate agent to recover his commission for making a sale which has not been completed, it is necessary for him to find a purchaser who is ready, willing, and able to buy, and to procure a written agreement to buy from the purchaser, which will be enforceable against him, if accepted and signed by the seller, provided the seller and purchaser have not come together, and an oral agreement to buy accepted by the seller."

In Reynolds v. Anderson, 37 Okla. 368, 132 P. 322, this court held:

"The only legal evidence of his intent to comply with those conditions is his written agreement to do so. Hence a real estate agent is not entitled to recover a commission for the sale of real estate, unless he has also (in addition to the foregoing requirements) procured and presented to the seller, from the purchaser, who is ready, willing, and able to buy, an enforceable contract in writing, binding him to take the land according to the terms and conditions agreed upon."

See, also, McCartney v. Shores, 77 Okla. 273, 188 P. 663, and Berquist v. Thomas, 86 Okla. 214, 207 P. 964. In Pliler v. Thompson, 84 Okla. 200, 202 P. 1016, the rule was again announced and the facts in that case were distinguished. This court there held:

"Where a real estate broker is employed to procure a purchaser for property listed with him and presents to the principal a proposed purchaser, it is for the principal then to decide whether the person presented is acceptable, and if without any fraud, concealment, or other improper practice on the part of the broker, the principal accepts the person presented, and at the time waives an enforceable contract from the purchaser, and thereafter the sale failed by reason of the fault of the owner, the broker would be entitled to the commission contracted for."

In Paris v. O'Harro, 100 Okla. 264, 229 P. 161, the purchaser was taken to the owner and the owner refused to make a contract for the sale of the property. To the same effect is Childs v. Moore, 57 Okla. 638, 157 P. 333, Bleecker v. Miller, 40 Okla. 374, 138 P. 809, and Thornburgh v. Haun, 79 Okla. 103, 190 P. 1083.

An examination of all of those cases discloses that a purchaser must be presented to the seller that the seller may accept or reject him as a purchaser, or a contract of purchase, signed by the purchaser, binding him to buy the property on the terms offered by the owner of the property to the agent, must be presented to the owner of the property. Until one or the other of those things has been done, no compensation is due as a commission to the agent, in the absence of a contract to the contrary. It is not sufficient for the agent to say to the owner of the property, "I have found a buyer who is ready, willing, and able to purchase the property."

The record in this case shows that the plaintiff did not present a purchaser to the defendant and that he did not present to him a binding contract for the purchase of the real estate on the terms offered by the defendant.

The theory of the plaintiff is shown by his brief to be as follows:

"Plaintiff in this case was not required to take Mr. Ennis to Amarillo. He reported the sale. He prepared a deed of conveyance conveying the property to Mr. Ennis and sent same to defendant with request that he send same to a certain bank. Defendant was then bound to act or make his objections to the bank or manner of sale. He would not say to plaintiff, 'I never listed this property with you. I will not sign your deed or recognize your contract because I did not list it with you', when in truth and in fact he had listed the property for sale

at the price of $5,000, and had agreed to pay a five per cent. commission, and by a mere denial of same evade paying of commission.

"How can plaintiff in error contend that the plaintiff had concealed anything from defendant. This was a deal to be closed as soon as defendant could act. He was notified both by telegram and by letter and acknowledged on witness stand receipt of both. If he wanted to see the contract he could have asked for it. He was not bound by it. If he had any objections to make to manner of closing the deal as suggested, he could have made them instead of denying that he had listed the property as he did do."

We do not agree with that statement. While the plaintiff was not required to take Mr. Ennis to Amarillo, he was required to take or send Mr. Ennis to Amarillo or to send a valid contract of purchase executed by Mr. Ennis to Amarillo before he could claim compensation for the sale of the real estate. There was nothing in the commission contract that required the plaintiff to send a deed to a bank in Guymon, Okla. He was entitled to have his money for the real estate at the time he signed the deed and he was not required to execute a deed to the real estate until he had received the money, or until the money was tendered to him. He was not required to object to the bank or to the terms of the sale. He was not required to ask to see the contract of purchase and he was not required to make any objection to the manner of closing the deal. He owned the property and the authority of the plaintiff was limited to selling the property for cash to be paid to the plaintiff at Amarillo at the time of the execution of the deed by him. He was not required to send the deed anywhere. He was not required to answer either the telegram or the letter of the plaintiff.

This action was for the recovery of a money judgment for an amount alleged to be due the plaintiff from the defendant under a contract. The burden of establishing by evidence the making of that contract, the terms thereof and performance thereof, under the pleadings, was on the plaintiff.

The filing of a general denial by the defendant put in issue every allegation of the plaintiff's petition, and it was incumbent upon the plaintiff to prove every allegation of his petition and every other thing necessary to show a cause of action against the defendant. The testimony offered by the plaintiff was insufficient to show a cause of action against the plaintiff.

In the brief of the plaintiff it is said, "He should have made his objection to the agent and should have pleaded these matters as defense, instead of raising them as an afterthought as in this case." Such is not the rule. The plaintiff was authorized to plead by way of general denial and to have the benefit of that plea, and he was not required to plead any affirmative defense in this sort of an action.

The plaintiff cites the case of Paris v. O'Harro, supra, as being directly in point and supporting his contention. In that case a purchaser, ready, willing, and able to take the property at an agreed price, was procured. The owner of the land refused to enter into a contract for the sale of the land with that purchaser, but agreed that he would not sell the premises to anyone else and that he would consummate the sale thereof to the purchaser on the following Saturday. He sold the property to another person on Friday. The record in that case shows that the purchaser was presented to the owner of the land and that they had a conversation with regard to the details of the purchase. The owner of the land did not object to the purchaser.

In this case the purchaser was never presented to the defendant. In the brief of the plaintiff it is said, "Mr. Ennis testified that he was ready, willing, and able to buy the property and pay $5,000 therefor." Such was not the testimony of Mr. Ennis, as we have heretofore shown.

The plaintiff cites Yoder v. Randol, 16 Okla. 308, 83 P. 537; Monzingo v. Bowers, 135 Okla. 225, 275 P. 339; Bleecker v. Miller, supra, and Thornburgh v. Haun, supra. None of those cases supports the contention of the plaintiff.

The brief of the plaintiff is devoted largely to a discussion of the evidence offered by the defendant. While the evidence as a whole does not show facts sufficient to entitle the plaintiff to recover in this action, we desire to call attention to the fact that in a law action the plaintiff must recover on the evidence offered by him, and the trial court in such an action is not authorized to withhold its ruling on a demurrer to the evidence of the plaintiff that should have been sustained and thereby force the defendant to prove a defense when the plaintiff has not established a cause of action by his evidence. The defendant in a law action is entitled to have a demurrer to the evidence ruled on at the conclusion of the evidence which is attacked by the demurrer.

The plaintiff overlooks the fact that, under the statutes of Oklahoma and the procedure followed in this state, the defendant is permitted to defend by defenses that are inconsistent with each other. The fact that one defense is not established, or that one defense is inconsistent with another defense, cannot operate to permit a plaintiff to recover. When a general denial to a plaintiff's petition in a law action to recover a money judgment for breach of contract is filed, the defendant is not required to show any evidence in support of any defense until the plaintiff has first proved by competent evidence such facts as are sufficient against a demurrer thereto on the ground of insufficiency thereof.

We think that there was error on the part of the trial court in permitting pleadings to be amended during the course of the trial, but that error we deem to be immaterial to a consideration of this appeal.

Objection is made to the instructions given by the court. We do not consider it necessary to discuss the instructions as they were based upon the theory of the trial court in the trial of this action, which has been hereinbefore discussed. If the cause is tried again, we think that the trial court will have no difficulty in instructing as to the law as announced herein.

The judgment of the trial court is reversed and the cause is remanded to that court, with directions to vacate the judgment rendered by the trial court in favor of the plaintiff and against the defendant, and to grant the defendant a new trial under the rules herein stated.

LESTER, C. J., and RILEY, HEFNER, SWINDALL, and KORNEGAY, JJ., concur. CLARK, V. C. J., dissents. McNEILL, J., concurs in conclusion. CULLISON, J., absent.