**Wayne H. ROBERTS, Plaintiff in Error,**

**v.**

**GARDNER, CLARKE AND SULLIVAN, a co-partnership composed of E. W. Clarke and F. E. Sullivan, Defendants in Error.**

**No. 35762.**

Supreme Court of Oklahoma.

Jan. 19, 1954.

Rehearing Denied Oct. 19, 1954.

Rex H. Holden and Walter L. Gray, Oklahoma City, for plaintiff in error.

Twyford, Smith & Crowe, Oklahoma City, for defendants in error.

WILLIAMS, Justice.

Parties are referred to herein as in the trial court.

Plaintiff, a partnership doing business as real estate brokers, sued defendant for a fee allegedly due under the terms of a brokerage contract entered into between plaintiff and defendant. By said contract, the terms of which were contained in a letter from defendant to plaintiff, defendant listed certain real estate with plaintiff for sale for a reasonable time, at a specified price, and "subject to prior sale". It also provided, among other things, that the buyer should place 10% of the sale price in escrow at the time of acceptance.

Plaintiff alleged full compliance with the terms of the contract; that it produced a

purchaser ready, willing and able to buy at the specified price; and that defendant refused to carry out his contract. Defendant's answer was a general denial plus an affirmative plea that the contract with plaintiff did not constitute plaintiff an exclusive agent for the sale of the land, and that defendant had sold the land to a Mr. Webber through another real estate firm prior to the production of a purchaser by plaintiff. Plaintiff's reply alleged that the sale referred to by defendant was not completed till after May 2, 1950, and was back-dated to May 1st for the purpose of defrauding plaintiff of its commission. After a trial to the court without the intervention of a jury, judgment was rendered for plaintiff, and defendant appeals.

One of the propositions argued by defendant on appeal is to the general effect that the court erred in rendering judgment for plaintiff, where the listing was a non-exclusive one and the broker did not produce a purchaser ready, able and willing to buy, or where he failed to produce a written binding contract to purchase, until after the owner had made a prior sale of the land. This proposition goes to the sufficiency of the evidence, and since we deem it to be controlling, we will not consider herein the other arguments advanced.

From the above summary of the pleadings it will be seen that the only real conflict concerns the date of the sale from defendant to Mr. Webber. It is agreed that the listing was a non-exclusive one, that there was a sale by defendant to a purchaser not procured by plaintiff, and that plaintiff did produce a purchaser ready, willing and able to buy. The question for our determination therefore is whether or not plaintiff produced a purchaser, ready, willing and able to accept the terms of defendant's offer before defendant sold the property to Mr. Webber.

Four witnesses testified for defendant on this point—Mr. Gray, defendant's attorney; Mr. Workman, the realtor who procured the sale to Mr. Webber, Mr. Webber, and defendant Roberts. The gist of their combined testimony (in which they corroborated each other as to all particulars in which each one was individually concerned) was as follows:

As Gray left his office the afternoon of May 1, 1950, Webber stopped him on the street and offered to buy the property in question at a specified price; Gray went back into his office, communicated the offer by telephone to defendant and his co-owners and got their acceptance. He then went to the home of Workman and told him what had happened; Workman called Webber to confirm the sale, then instructed Gray to prepare a contract of sale, which he did that night (May 1). The next morning Gray took the contract to Webber, who signed it, then went to his office, and about 9 or 10 o'clock defendant and his co-owners came in and signed the contract. It is to be noted that the contract was dated May 1, 1950, the date of the oral agreement, and not May 2, the date when it was actually signed.

Plaintiff argues that defendant's attorney did not produce the contract of sale for examination by plaintiff at a conference in the attorney's office on the morning of May 4 (or 3), and infers from this that the contract actually did not exist on that day. If such request were made and refused, such circumstances still would not amount to positive evidence that there was no contract or sale, since defendant's attorney was under no obligation to exhibit the contract to a third party.

Plaintiff also argues that the evidence shows that defendant's attorney, at the above-mentioned conference, said that the contract in question was in the possession of Mr. Workman, the agent who handled the sale to Webber; that Workman was called and came over to the conference; that Workman then said that the contract was oral and that all he ever got was a check. The actual testimony (by an attorney for plaintiff) was that Mr. Workman said "There are no papers. That deal is oral. We got a check." Mr. Workman explained on cross-examination that he was referring to another contract (for the purchase by himself of an interest from Webber) concerning the same land and further stated unequivocally that he had never said

that there was no written contract between Webber and defendant, because he knew there was. We believe this fails to constitute a serious conflict on a material issue.

We therefore conclude that the sale to Webber became final and binding at 9 or 10 o'clock on the morning of May 2, 1950.

The evidence, substantially uncontradicted, as to when plaintiff secured a purchaser ready, willing and able to purchase the land was as follows:

Plaintiff had been negotiating for some months with a railroad company with regard to purchasing the land. On February 21, 1950, defendant wrote plaintiff a letter which included the terms of the listing, as set out in the second paragraph of this opinion. Sometime thereafter, the directors of the railroad company approved the purchase, and on May 2, 1950, at Fort Worth, Texas, a Mr. Diebert, acting for the railroad company, wrote on the letter above referred-to "Accepted by purchaser, G. A. Diebert, May 2, 1950 For Chicago, Rock Island and Pacific Railroad Co., a Delaware Corporation". The next day, May 3, Mr. Diebert came to Oklahoma City, bringing the acceptance with him, and made out a check in the amount of 10% of the purchase price, payable to defendant Roberts and his wife, and Mr. Diebert tendered it to Mr. Gray, defendant's attorney, at a conference in Gray's office on the morning of May 4th.

■ The evidence, therefore, construed in the light most favorable to plaintiff, shows that Mr. Diebert's acceptance of the offer could not have been completed before May 4, 1950, since that was the earliest possible date on which he could have delivered the acceptance to defendant or his agents, all of whom were in Oklahoma City.

■ We therefore hold that under the uncontradicted evidence herein, the sale by defendant to Mr. Webber was completed on May 2, 1950, and the plaintiff produced a purchaser ready, willing and able to buy on May 4, 1950. Such being the case, the following rule applies:

"In order for a real estate agent to recover his commission for making a sale which has not been completed, it is necessary for him to find a purchaser who is ready, willing, and able to buy, and to procure from the purchaser a written agreement to buy, which will be enforceable against him, if accepted and signed by the seller, or to present the purchaser to the seller that an oral agreement of the purchaser to buy may be accepted by the seller." Scott v. Kennedy, 152 Okl. 165, 3 P.2d 907, 908.

■ There is some evidence in the record, and argument in the briefs, as to whether or not defendant notified plaintiff that he (defendant) had made a sale before plaintiff produced the purchaser he had procured. Such is immaterial; see Kennedy & Kennedy v. Vance, 201 Okl. 80, 202 P.2d 214, 215, wherein the court said in the body of the opinion:

"Since the plaintiffs were not given an exclusive right to sell, they assumed the risk of knowing that the land might be sold by the owner or another agent before they could find a purchaser, ready, able and willing to buy on the terms specified, and that such a sale would ipso facto revoke their agency. Mechem on Agency, 2d Ed., No. 625."

"In the Woodall case [Woodall v. Foster, 91 Tenn. 195, 18 S.W. 241] there was no exclusive agency for any definite time, but the decision is based on the failure of the owner to notify the agent of the sale. We think this case is contrary to the weight of authority, and that the following cases and authorities rest on the better reason. * * *" (Citing authorities.)

The judgment of the trial court is reversed, with directions to enter judgment for defendant.

HALLEY, C. J., and WELCH, DAVISON and O'NEAL, JJ., concur.

JOHNSON, V. C. J., and CORN, ARNOLD and BLACKBIRD, JJ., dissent.