## KEE v. BETHURUM.

No. 19736. Opinion Filed Oct. 7, 1930.

Rehearing Denied Dec. 23, 1930.

238

Clarence Mills, for plaintiff in error.

Everest, Dudley & Brewer, for defendant in error.

ANDREWS, J. The parties to this appeal appear in the same order as they appeared in the trial court. They will be hereinafter referred to as plaintiff and defendant, respectively.

Plaintiff's petition alleged that he orally contracted and agreed with the defendant that he was to have the use and occupancy of a room in the dwelling of the defendant "as a roomer, at a fixed and agreed compensation to this defendant from this plaintiff due from month to month"; that, pursuant to said agreement, he moved into the private room and left therein "under the care, custody and control of this defendant certain articles of his clothing, wearing apparel, and other personal property and did occupy the said room as a tenant thereof under and by virtue of said oral agreement"; that on his return from a trip he had made which necessitated his absence from said room for several days he discovered that certain articles of his personal property, therein described, which he had left in said room "under the care, custody and control of this defendant for safekeeping," were missing; that he was the owner and entitled to the immediate possession of the property; that he "placed the same in said room with the knowledge and consent of this defendant and

under and by virtue of the terms and conditions of said oral contract and agreement and that said placing of said property in said room and the safekeeping thereof by this defendant was a part and parcel of said oral contract and a part and parcel of the consideration agreed to be paid by plaintiff to defendant under said oral contract, and that though the plaintiff has demanded of this defendant a return of said personal property, defendant has wholly failed, neglected, and refused to return said property or any part or parcel thereof and has wholly breached the terms of said oral contract and agreement to the damage of this plaintiff in the sum of $292.50," for which amount he prayed judgment.

The answer to the petition consisted of a general denial, a specific denial that defendant was an innkeeper or boarding house keeper, an allegation that she had only one room which she rented in her apartment, and an admission that on or about the 6th day of October, 1927, the "plaintiff and defendant entered into an oral contract for the use and occupancy of a room in the dwelling of this defendant." The answer further alleged that:

"This defendant had advertised for a roomer, and in answer to the advertisement plaintiff presented himself, examined the room and stated that it would answer his requirements, but that he was not able to pay as much rent as $5 a week and asked the defendant if she could not get someone to share the room with him"

—and that pursuant thereto she did advertise for someone to occupy the room with the plaintiff and that in pursuance of that advertisement she rented the room to another man, who might have taken the property, but if so, it was through no fault of hers.

The reply denied all the allegations of the answer which were inconsistent and contrary to the allegations of the petition.

The cause was tried to a jury. At the conclusion of plaintiff's evidence the defendant interposed a demurrer thereto on the ground that the same did not show facts sufficient to entitle the plaintiff to recover. The trial court sustained that demurrer and dismissed the action. After a motion for new trial was overruled the cause was brought to this court on appeal.

The evidence showed that the plaintiff, in answer to a newspaper advertisement, as follows: "If two boys want a real home with private family, call 4-4509," went to the home of the defendant and told her that he came in answer to the ad. She said, "I

would like to have two boys." He told her he needed a room that night and would like to move in, but did not have anyone to move in with him and asked her how much the room would be for himself. She told him it would be $20 for two, and for one she could let him have it for $18 a month. He offered her $15 a month, and she said that she would take that, but that she would like to have another boy in there and "if you can't find anybody, would it be all right for me to find someone?" He said, "Yes, if you find someone that is absolutely all right, and be sure they are before they move in, because I have nearly always roomed by myself since I have been in the city, and if I can help it I would rather not room with anyone." He told her that if she found anyone "he must be absolutely all right with me and receive my O. K. before he moved in with me." The room was a small room on the first floor containing one double bed. Entrance was obtained by passing through the front door of the house into a hall, from the hall into a sitting room, and from the sitting room into the rented room. Defendant told the plaintiff that the front door was left unlocked. The door from the sitting room into the rented room was not locked. The plaintiff knew of the condition and accepted the room in that condition.

Defendant told the plaintiff that she was employed at a fraternity house and that she was only home during the day "from 11 to 12 and 3 to 4 in the afternoon."

The plaintiff gave the defendant a check for $7.50 marked "For rent in full" and moved into the room.

The plaintiff was down at Seminole once or twice and down at Norman once or twice during the next two weeks and could not tell just how many nights he slept in the room. He did not tell the defendant when he was going to be away over night. He came and went at will without giving the defendant any information as to his whereabouts or his intended absence and thought that was his privilege.

On Wednesday morning he left and did not return to the room until Thursday evening, when he found a note from the defendant on the dressing table which read as follows:

"Mr. Kee: Do not get frightened if your roommate should come in while you are asleep. It seems impossible to see you to tell you about him. However, I am sure it will be satisfactory, as he has been with the 'Okla.' and 'Times' for 3 or 4 years, and

they speak very highly of the young man. Mrs. Bethurum."

He did not see anything wrong when he returned to the room, but on Friday morning when he got up he noticed that the property in question was gone. He immediately notified the defendant by calling her over the telephone at the fraternity house where she worked. She told him that the day before a man whom she thought was named Thomas had called to see about the room and that she rented it to him. She had to return to her work at the fraternity house and when she returned to her house the man was gone. She said that she saw a Gladstone bag behind the bed after she had rented the room to the stranger and that when she came back and found the man gone the bag was gone.

There was no evidence in support of plaintiff's allegation that he left his property "under the care, custody and control of this defendant for safekeeping." If the duty of caring for his property rested on her, it was because of the relationship between the parties and not because of any specific contract to that effect.

The theory of the plaintiff's case was stated by his attorney when he objected to questions asked as being improper cross-examination. He said: "This is a bailment case, and certain things are necessary to our case, and we do not want to put ourselves in a position of going too far in chief and getting ourselves on the other side of the fence. There are two theories. We brought this for breach of contract, and we do not want to put ourselves in the position of bringing it on the ground of tort. I think the cross-examination is improper, because I never went into that on direct examination at all." The objection was properly overruled. The plaintiff's attorney then said: "If the court please, the only thing we want to go into here is the conversation over this telephone at the time. I explained to the court why. There is no objection on my part, but this is an improper time to try to bring that out. Our petition is very short, and we brought it for breach of contract on bailment. This conversation is going into the question of Mrs. Bethurum's defense in this case. I do not think it is proper at this time."

Plaintiff does not contend that the defendant was an inn or boarding house keeper, and as such, an insurer of the goods of her guests, under section 5210, C. O. S. 1921, but says that the defendant was a lodging house

keeper "owing the duty of ordinary care to the goods of her guests as a bailee for hire, and liable for all damage resulting from a failure to exercise such ordinary care."

The facts, as shown by this record, do not constitute the defendant a bailee within the meaning of our statutes on bailment. Sections 5181 to 5221, C. O. S. 1921. This court, in Broaddus v. Commercial Nat. Bank of Muskogee, 113 Okla. 10, 237 Pac. 583, said:

"* * * To constitute a bailment there must be a delivery and full transfer, either actual or constructive, of the property to the bailee, so as to exclude the possession of the owner, and all other persons, and give to the bailee, for the time being, the sole custody and control thereof."

The plaintiff was not excluded from possession of the property and the defendant did not have the sole custody and control thereof. The most that can be said is that the property was under the joint control and in the joint custody of the plaintiff and the defendant.

Since there was no bailment of the property in question and since it is admitted by the plaintiff that defendant was not an innkeeper or boarding house keeper within the meaning of section 5210, C. O. S. 1921, and since the defendant did not contract for the care, custody, or control of the property in question, the only liability that could exist against the defendant is that growing out of the relationship between the plaintiff and the defendant.

In support of his contention that as a lodging house keeper the defendant owed plaintiff "the duty of ordinary care to the goods of her guests as a bailee for hire," the plaintiff quotes from 14 R. C. L., at page 535, and stops the quotation in the middle of the paragraph. Immediately succeeding the text quoted by him appears the following:

"In the absence of proof of negligence they are not liable, and the burden of proof is on the plaintiff, for the law presumes that one has fulfilled his legal obligation."

The text cited by the plaintiff from 14 R. C. L., supra, says that "* * * the degree of care required of them is that which a prudent owner would take for the safety of his own goods."

We agree with the plaintiff in his contention that in determining whether or not the demurrer to the evidence should have been sustained, the rule stated in Rosenberg v. Olson, 88 Okla. 252, 212 Pac. 746, as follows:

"The test applied to a demurrer to the evidence is that all the facts which the evidence in the slightest degree tends to prove, and all inferences or conclusions which may be reasonably and logically drawn from the evidence, are admitted. The court cannot weigh conflicting evidence, but must treat the evidence as withdrawn which is most favorable to the demurrant"

—should have been applied. We think that the rule was applied. The only question is, Was the defendant negligent in renting a room to a stranger? This court is not willing to say that renting a room to a stranger is negligence.

Plaintiff contends that a prima facie case was made out when he showed a bailment and a failure to return the property on demand, and in support thereof, he cites Metropolitan Electric Service Company v. Walker, 102 Okla. 102, 226 Pac. 1042. That case involved a bailment and it has no application to the facts in this case. Section 5198, C. O. S. 1921, is a part of the chapter on Bailments, and is as follows:

"If a thing is lost or injured during its deposit, and the bailee refuses to inform the bailor of the circumstances under which the loss or injury occurred, so far as he has information concerning them, or willfully misrepresents the circumstances to him, the bailee shall be presumed to have willfully, or by gross negligence, permitted the loss or injury to occur."

The record in this case shows that the defendant informed the plaintiff of the circumstances under which the loss occurred so far as she had information concerning the loss, and having done so, there can be no presumption of negligence on her part even under the bailment theory of plaintiff.

The evidence showed a breach of contract on the part of the defendant in that she rented the room to the stranger without the approval of the renter by the plaintiff. Had a cause of action been prosecuted for breach of contract, the burden would have been on the plaintiff to show that the breach of the contract was the proximate cause of the loss. The action was not prosecuted on that theory either in the trial court or in this court. The plaintiff selected his theory and elected to present his case on that theory. He is bound thereby and would not be permitted to change that theory, though he sought to do so, which he does not do.

Under the issues presented in this case, the burden was upon the plaintiff to prove want of ordinary care on the part of the defendant. He did not sustain that burden. He did not allege negligence and he did not prove negligence. He contends that it was

not necessary for him to do so. He is wrong in that contention.

The judgment of the trial court sustaining the demurrer to the evidence of the plaintiff is affirmed.

MASON, C. J., and CLARK, RILEY, HEFNER, CULLISON, and SWINDALL, JJ., concur.

LESTER, V. C. J., and HUNT, J., absent.